JAMES J. STOKES vs. COMMONWEALTH.

Suffolk. February 3, 1975. — October 16, 1975.

Present: TAURO, C.J., REARDON, QUIRICO, BRAUCHER, & HENNESSEY, JJ.

*Delinquent Child. Jurisdiction,* Delinquent child. *Superior Court,*
Jurisdiction. *Constitutional Law,* Double jeopardy, Due process
of law, Ex post facto law, Equal protection of laws. *Practice,*
*Criminal,* Double jeopardy, Probable cause hearing, Binding over
for trial.

A defendant over sixteen but under seventeen years of age was never
put in jeopardy of being adjudged a delinquent child under ju-
venile complaints for breaking and entering and murder where it
appeared that a District Court judge after a hearing concerned
only with the defendant, who had a record of past juvenile of-
fenses, indicated that the defendant should be tried as an adult
and dismissed the complaints pursuant to G. L. c. 119, § 61, with-
out a prior adjudication of delinquency; and, where it further
appeared that adult complaints were then issued against the de-
fendant pursuant to § 75, and a probable cause hearing held
jointly with one held on adult complaints against two alleged par-
ticipants in the crimes, and that the three defendants were then
bound over for trial in the Superior Court, it was held that the
juvenile defendant was not subjected to double jeopardy when
tried there even if the decision in *Breed* v. *Jones,* 421 U. S. 519
(1975), applied retroactively. [759-765]
Under the criteria stated in *Stovall* v. *Denno,* 388 U. S. 293, 297
(1967), this court determined that new standards established in
*Breed* v. *Jones,* 421 U. S. 519 (1975), respecting double jeopardy
should not be accorded retroactive effect. [765-769]
There was no merit in contentions of a defendant convicted on in-
dictments for breaking and entering and murder that his acts
were not criminal because committed while he was between the
ages of fourteen and seventeen, and that the ex post facto and due
process clauses of the Constitution of the United States were vio-
lated because the procedures set up by G. L. c. 119, §§ 61, 74,
and 75, were followed and the defendant was bound over for trial
as an adult instead of being dealt with as a delinquent child.
[771-773]
The "interests of the public" criterion in G. L. c. 119, § 61, for deter-
mining whether a juvenile charged with a criminal offense should

be tried as an adult is not so vague as to bar proceedings on an adult complaint following dismissal of the juvenile complaint. [773-774]

A judge of a District Court, in making a decision under G. L. c. 119, § 61, whether to transfer a criminal case against a juvenile to the Superior Court for trial of the defendant as an adult, is exercising "a judicial function" and there is no delegation of legislative power to the judiciary in violation of art. 30 of the Declaration of Rights of the Massachusetts Constitution. [774]

At a hearing under G. L. c. 119, § 61, by a District Court judge whether to transfer to the Superior Court for trial as an adult a juvenile represented by counsel and named in juvenile complaints for breaking and entering and murder, alleged failure of the judge "to review, or to permit . . . [the defendant] to comment upon, his prior juvenile record or on the possibility of his successful treatment as a juvenile" was harmless error against claims of violations of due process and equal protection rights and of the provisions of § 61, and failure of the judge to give a statement of his findings and reasons for dismissing the juvenile complaint and transferring the case was not improper since such statement was not then required. [774-776]

PETITION for a writ of error filed in the Supreme Judicial Court for the county of Suffolk on April 19, 1973.

The case was reserved and reported by *Kaplan, J.*

*Thomas H. Walsh, Jr.,* for the plaintiff.

*Barbara A. H. Smith,* Assistant Attorney General, for the Commonwealth.

QUIRICO, J. This case was commenced by a petition for a writ of error filed in the county court. After the writ was issued, and the pleadings were completed, a single justice reserved and reported the case to the full court on the petition, the assignment of alleged errors, the return of the Superior Court, the Commonwealth's answer and a statement of agreed facts.

The petitioner and two codefendants were each indicted, and in a single trial were convicted, of the crimes of breaking and entering a building in the nighttime with intent to commit a felony and of murder in the first degree. On the conviction of murder the jury rec-

ommended that the death penalty be not imposed.  In *Commonwealth* v. *Rego,* 360 Mass. 385 (1971), an appeal by the present petitioner and his two codefendants under G. L. c. 278, §§ 33A-33G, we affirmed the judgments on the breaking and entering indictments and directed that verdicts of guilty of murder in the second degree be entered against all three defendants on the murder indictments.  The petitioner is now confined at Massachusetts Correctional Institution, Concord, serving two concurrent sentences, one for life imposed in the murder case, and one for eight to fifteen years imposed in the breaking and entering case.  The circumstances of the petitioner's crimes and of the trial and certain related proceedings are set forth at some length in *Commonwealth* v. *Rego, supra,* and we will include here only those additional facts necessary to place the issues of the present proceeding in context.

The petitioner alleges seven errors, all relating to the juvenile delinquency proceeding which resulted in the transfer of the petitioner's case from the juvenile jurisdiction of the Municipal Court of the Dorchester District to the adult jurisdiction of the Superior Court.  The alleged errors are that:  (1) the petitioner was twice put in jeopardy for the same offense, in violation of the Fifth and Fourteenth Amendments to the United States Constitution, when he was tried in the Superior Court for offenses which had previously been the subject of juvenile delinquency complaints brought and dismissed in the Municipal Court; (2) the petitioner was convicted, in violation of his right to due process under the Fourteenth Amendment to the United States Constitution and under art. 24 of the Declaration of Rights of the Constitution of the Commonwealth, of crimes which, because of his age (sixteen years and two months) at the time of the acts in question, were not crimes when he committed them; (3) the statute under which the Municipal Court dismissed the juvenile delinquency complaints, G. L. c. 119, § 61, is so vague and indefinite as to violate the due process

clause of the Fourteenth Amendment; (4) General Laws c. 119, § 61, delegates legislative functions to the judiciary in violation of art. 30 of the Declaration of Rights of the Constitution of the Commonwealth; (5) the Municipal Court judge violated the petitioner's rights under the due process clause of the Fourteenth Amendment by failing to review, or to permit the petitioner to comment on, his prior juvenile record or on the possibility of his successful treatment as a juvenile, and by failing to give a statement of reasons for dismissal of the juvenile complaints; (6) the Municipal Court judge violated the petitioner's rights under G. L. c. 119, § 61, for the same reasons alleged in (5), above, to be violations of the petitioner's rights under the due process clause; and (7) the dismissal of the juvenile delinquency complaints violated the equal protection clause of the Fourteenth Amendment to the Constitution of the United States because no compelling reason was demonstrated for that dismissal. In short, the petitioner argues that it was error of constitutional proportions to try him at all as an adult following juvenile delinquency proceedings of the nature of those to which he was subjected.

The circumstances of the juvenile proceedings are summarized briefly. Because the petitioner was under seventeen years of age at the time he committed the acts alleged to constitute breaking and entering and murder, adult criminal proceedings could not be commenced against him unless juvenile delinquency proceedings had previously been commenced and dismissed. G. L. c. 119, § 74. The petitioner was first charged in two complaints issued on June 23, 1969, with juvenile delinquency (a) by reason of breaking and entering in the nighttime with intent to commit larceny and (b) by reason of murder. On June 25, 1969, the petitioner was arrested and brought before the Municipal Court, whereupon he was committed to jail without bail pending a hearing on the delinquency complaints.

On July 8, 1969, a proceeding was held in the Municipal Court. The transcript of this proceeding carries the caption "Probable Cause Hearing — Commonwealth vs. John Stokes, et al." It appears that this proceeding actually consisted of two parts, the first being a hearing concerned only with the present petitioner and resulting in a decision that "[t]his young man is to be held." We take this to be an indication of the judge's decision in accordance with G. L. c. 119, § 61, that the interests of the public required that the petitioner should be tried for his offenses as an adult rather than be dealt with as a delinquent child.

Immediately following this portion of the proceeding, the two juvenile complaints were dismissed, and sometime later on that same day two adult complaints were issued against him. See G. L. c. 119, § 75. The second part of this July 8 proceeding seems to have been a bind-over hearing involving all three defendants (the petitioner's two codefendants apparently being over seventeen years of age), as required to be held by G. L. c. 218, § 30, and c. 119, § 75. In the case of the petitioner, as well as in the cases of his codefendants, probable cause was found, and he was ordered bound over to await action of the grand jury. The indictments and convictions which resulted are those recounted in *Commonwealth* v. *Rego*, 360 Mass. 385 (1971).

The only evidence presented or offered at the portion of the July 8 proceeding involved with the juvenile complaints against the petitioner was introduced by the Commonwealth. This evidence consisted of the testimony of a single witness who recounted several meetings he had had with the petitioner at which the petitioner had made various admissions concerning the alleged breaking and entering and the murder. The petitioner, through counsel, cross-examined this witness, but offered no evidence of his own. It does not appear in the transcript whether the judge had before him or considered the petitioner's record of past juvenile offenses. This record included at

least five previous adjudications of delinquency for offenses ranging from being a stubborn child to possession of burglarious tools, breaking and entering, and larceny. The only indication of the reasons for the dismissal of the juvenile complaints is the following statement which appears on the back of each of the dismissed complaints: "July 8, 1969 That the interest of the public requires that he shall·be tried for the said offence."

1. *Double jeopardy.*  The petitioner's argument that he was twice put in jeopardy for the same offense by first being subjected to proceedings in the Municipal Court on the juvenile delinquency complaints and then being tried in the Superior Court on the indictments on which he was convicted is substantially the same one which we recently rejected on similar facts in *A Juvenile, petitioner,* 364 Mass. 531 (1974).  In that case we concluded that "[t]he dismissal of the juvenile complaint and the issuance of an adult complaint are contemplated by the statute (G. L. c. 119, § 75) to be in effect one event, and, as such, any jeopardy to which a juvenile was initially subjected under the juvenile complaint continues under the adult complaint."  *Id.* at 541.

Following argument of the present case, however, the Supreme Court of the United States rendered its decision in *Breed* v. *Jones,* 421 U. S. 519 (1975), relating to proceedings in courts of the State of California.  In that case, involving a young man whose criminal trial and conviction of robbery followed a Juvenile Court determination that he had committed the robbery but that he was unfit for treatment as a juvenile, the court held "that the prosecution of respondent in Superior Court, after an adjudicatory proceeding in Juvenile Court, violated the Double Jeopardy Clause of the Fifth Amendment, as applied to the States through the Fourteenth Amendment." *Id.* at 541.

In light of the Supreme Court's decision, we authorized the parties to this case, as well as the district attorney who had originally prosecuted the underlying criminal

cases, to file briefs limited to the effect of the decision in
*Breed* v. *Jones, supra,* on this case. The parties and the
district attorney were invited, in particular, to address (1)
whether *Breed* v. *Jones,* if applicable to the present case,
would require a holding that the petitioner's right not to
be twice put in jeopardy for the same offense was vio-
lated, and (2) whether *Breed* v. *Jones* is applicable to a
case like the present one in which all of the lower court
proceedings at issue occurred before the date of that de-
cision. The petitioner filed a brief urging that both ques-
tions be answered in the affirmative, while the Attorney
General, for the Commonwealth, and the district at-
torney, as amicus curiae, filed briefs urging that both
questions be answered in the negative.

For the reasons discussed below, we hold that (1) if the
decision in *Breed* v. *Jones* were to be applied retroactively
the petitioner was not subjected to double jeopardy on
the facts peculiar to this case, and (2) the decision should
not be applied retroactively.

There are significant distinctions between the California
and Massachusetts statutory provisions for the disposition
of cases involving charges of juvenile delinquency in so
far as concerns the manner and circumstances in which
jurisdiction over the offenders involved in such cases may
be transferred from the court having original jurisdiction
of juvenile delinquency proceedings to the Superior Court
where the juvenile was ultimately tried and convicted as
an adult. These distinctions are pointed out by the fact
that in the juvenile delinquency proceeding involved in
*Breed* v. *Jones* the juvenile was actually adjudicated a
violator of a law of the State of California, and the trans-
fer of jurisdiction over him to the Superior Court was
only made as one of several alternate dispositions available
to the Juvenile Court judge at the disposition hearing
which follows such an adjudication of delinquency. See
421 U. S. at 521-527, 529 n. 11; Cal. Welfare & Insts.
Code, §§ 602, 607, 701, 702, 707, and 731 (Deering
1969). In the juvenile delinquency proceeding involved

in the present case, no adjudication of delinquency preceded the transfer of jurisdiction over the petitioner to the Superior Court. Indeed, the Municipal Court could not have issued adult complaints or bound the petitioner over to the grand jury unless the juvenile complaints were first dismissed. See G. L. c. 119, §§ 61, 74, and 75.

Despite the distinctions between *Breed* v. *Jones* and the present case, however, we note that the *Breed* v. *Jones* court adhered to the view that "the Double Jeopardy Clause . . . is written in terms of potential or risk of *trial* and conviction, not punishment." 421 U. S. at 532, quoting from *Price* v. *Georgia,* 398 U. S. 323, 329 (1970). The fatal double jeopardy problem in *Breed* v. *Jones,* therefore, was not that the juvenile could have been punished twice, but that he "was subjected to the burden of two trials for the same offense; he was twice put to the task of marshaling his resources against those of the State, twice subjected to the 'heavy personal strain' which such an experience represents." 421 U. S. at 533, quoting in part from *United States* v. *Jorn,* 400 U. S. 470, 479 (1971). In the course of its decision, the Supreme Court considered and rejected the argument which we had accepted in *A Juvenile, petitioner,* 364 Mass. 531 (1974), that juvenile and adult criminal proceedings for the same offense were in reality part of a single, "continuing jeopardy." 421 U. S. at 533-535.

The effect of *Breed* v. *Jones* is not to prohibit trial in the Superior Court of any individual who was first subjected to *any* juvenile proceedings in the Juvenile, District or Municipal Courts of the Commonwealth. Rather, the effect of that case is to prohibit trial in the Superior Court only of those individuals who have previously been subjected to *adjudicatory* juvenile delinquency proceedings in the Juvenile, District or Municipal Courts. As the court put it in *Breed* v. *Jones:* "Jeopardy attached when respondent was 'put to trial before the trier of the facts,' . . . [quoting in part from *United States* v. *Jorn, supra,* at 479] that is, when the Juvenile Court, as the trier of

the facts, began to hear evidence." 421 U. S. at 531, citing *Serfass* v. *United States,* 420 U. S. 377, 388 (1975).

It would thus appear to be impermissible, since *Breed* v. *Jones,* first to subject a juvenile to an adjudicatory juvenile proceeding — that is, one in which there was an apparent risk that an adjudication of juvenile delinquency might be made and at which evidence on the merits of the juvenile complaints was heard by the trier of facts, and thereafter to try him as an adult in the Superior Court. It is still permissible, however, for a juvenile to be tried in the Superior Court following a transfer hearing — that is, one in which the only matter at issue was whether the juvenile would subsequently be treated as a juvenile or tried as an adult. As the Supreme Court pointed out in *Breed* v. *Jones,* the basic effect of its holding was to "require, in most cases, that the transfer decision be made prior to an adjudicatory hearing." 421 U. S. at 536.

It is to be noted that it is still allowable to introduce at the transfer hearing, as a factor for consideration in the transfer decision, substantial evidence that the juvenile committed the offense in question. 421 U. S. at 538 n. 18. The Supreme Court apparently attached some significance to the fact that the juvenile delinquency proceeding involved in *Breed* v. *Jones* was "not one in which the judicial determination was simply a finding of, e.g., probable cause . . . [but was instead] an adjudication that respondent had violated a criminal statute." *Ibid.* The juvenile delinquency proceeding involved in the present case was entitled "Probable Cause Hearing" in the transcript of that proceeding. If the Municipal Court judge had made clear at the outset of that proceeding that he intended at that time to conduct only a transfer hearing, and that any adjudicatory hearing would follow only in the event it was decided to treat the petitioner as a juvenile delinquent and not as a criminal offender, we believe that no double jeopardy problem would have arisen. Such a procedure is now required by

Rule 85A of the Rules of the District Courts (1965), as amended, as that rule was altered by a memorandum directive which the Chief Justice of the District Courts issued shortly after *Breed* v. *Jones* was decided. That memorandum directive also alters Rule 85A, in accordance with *Breed* v. *Jones*, 421 U. S. at 536-537, to require that if transfer is rejected a different judge must preside at the adjudicatory hearing.

When the petitioner was brought before the court on July 8, 1969, for action on the juvenile complaints against him, adult complaints were then pending against his brother John F. Stokes, and against Joseph F. Rego, charging them with the crime of murder for the same homicide involved in the juvenile complaints against the petitioner. The first part of the proceeding on that day was limited to the juvenile complaints. The transcript of the proceeding does not indicate that the judge made any statement about the purpose, scope or limits of the proceeding. This omission supports, and, it may be argued, perhaps requires, a conclusion that the judge was precluded from making any adjudication of delinquency. In *Corey* v. *Commonwealth*, 364 Mass. 137, 141-142 n. 7 (1973), we discussed the problems which might arise from a judge's failure to state in advance the purpose or nature of a hearing which, at his option, could be either a hearing on the merits of a criminal complaint or merely a probable cause hearing thereon. We then said: "To avoid these problems, a District Court judge should announce, *before the hearing commences*, whether he is conducting a probable cause hearing or a full trial on the merits."

There are additional facts which support a conclusion that the hearing on the juvenile complaints was not one which was likely to end in an adjudication of delinquency. The petitioner was then over sixteen years old and he had a record of numerous prior adjudications of delinquency. He was being charged with participating with two adults in the commission of a homicide for

which an adult might be sentenced to death. G. L. c. 265, § 2. There was no reasonable basis to expect that the juvenile complaints would be disposed of by an adjudication that the petitioner was delinquent; and there were reasons which compelled a belief that, on presentation of evidence of the petitioner's participation in the alleged crimes, he would be charged as an adult and thereafter be proceeded against in the same manner as the two adult defendants in the case. Such evidence was presented and the judge thereupon, without making an adjudication of delinquency, caused the juvenile complaints to be dismissed and adult complaints to be issued. He then held a probable cause hearing as to all three defendants and bound them over to the Superior Court for grand jury consideration of their cases.

We conclude on the facts peculiar to this case that the petitioner was never put in jeopardy of being adjudged a delinquent. However, we do not rest our decision in this case solely on that ground because, as stated earlier in this opinion, we also hold that the decision in *Breed* v. *Jones, supra,* should not be applied retroactively.

"'[T]he Constitution neither prohibits nor requires retrospective effect' for decisions expounding new constitutional rules affecting criminal trials." *Desist* v. *United States,* 394 U. S. 244, 248-249 (1969), quoting in part from *Linkletter* v. *Walker,* 381 U. S. 618, 629 (1965). Courts may "in the interest of justice make the rule prospective . . . where the exigencies of the situation require such an application." *Johnson* v. *New Jersey,* 384 U. S. 719, 726-727 (1966), quoting from *Linkletter* v. *Walker, supra,* at 628, and *Tehan* v. *United States ex rel. Shott,* 382 U. S. 406, 410 (1966). In most cases, "[t]he criteria guiding resolution of the question [of retroactivity] implicate (a) the purpose to be served by the new standards, (b) the extent of the reliance by law enforcement authorities on the old standards, and (c) the effect on the administration of justice of a retroactive

application of the new standards." *Stovall* v. *Denno,* 388 U. S. 293, 297 (1967).

Under the three part criteria of *Stovall* v. *Denno,* it would seem clear that *Breed* v. *Jones* should not be accorded retroactive effect. The purpose and effect of new double jeopardy standards in general appear to be to insure that a defendant is not "subjected to the burden of two trials for the same offense; . . . [not] twice put to the task of marshaling his resources against those of the State [and not] twice subjected to the 'heavy personal strain' which such an experience represents." 421 U. S. at 533, quoting in part from *United States* v. *Jorn,* 400 U. S. 470, 479 (1971). See *Benton* v. *Maryland,* 395 U. S. 784 (1969) (double jeopardy clause held binding on the States); *Waller* v. *Florida,* 397 U. S. 387 (1970) (State and municipality may not both prosecute an individual for the same offense).

The purpose and effect of *Breed* v. *Jones,* however, might be seen as considerably less sweeping. This is because *Breed* v. *Jones* does not prohibit double proceedings (that is, a juvenile proceeding followed by an adult trial); it merely requires that if there are two proceedings the first must be limited to the question of transfer. It is doubtful that such limiting of the scope of the juvenile proceeding will appreciably lessen the burden on the juvenile of twice "marshaling his resources against those of the State." He still must appear at the juvenile proceeding and face "[t]he possibility of transfer . . . to a court of general criminal jurisdiction [which] is a matter of great significance to the juvenile." *Breed* v. *Jones, supra,* at 533, 535. Whether or not transfer is made, he still must face a subsequent adjudicatory proceeding. In short, while *Breed* v. *Jones* eliminates what might be termed the technical double jeopardy problem of subjecting a juvenile to two adjudicatory proceedings, it probably does little to alleviate the practical problem of twice subjecting a defendant to the strain of marshaling his resources against the State.

Indeed, on a careful reading and consideration of *Breed* v. *Jones,* we are left with the belief that the real problems addressed by that decision, and the real benefits flowing to the juvenile from it, are perhaps more readily ·grasped in due process terms than they are in double jeopardy terms. *Breed* v. *Jones* does not bar the second of two proceedings. Rather, it increases the fairness of the first of two proceedings by eliminating "the dilemma that the possibility of transfer after an adjudicatory hearing presents for a juvenile . . .. Because of that possibility, a juvenile, thought to be the beneficiary of special consideration, may in fact suffer substantial disadvantages. If he appears uncooperative, he runs the risk of an adverse adjudication, as well as of an unfavorable dispositional recommendation. If, on the other hand, he is cooperative, he runs the risk of prejudicing his chances in adult court if transfer is ordered. We regard a procedure that results in such a dilemma as at odds with the goal that, to the extent fundamental fairness permits, adjudicatory hearings be informal and nonadversary." 421 U. S. at 540. This "dilemma" is the principal problem met squarely and eliminated by *Breed* v. *Jones.*

*Breed* v. *Jones* also meets squarely and eliminates a subsidiary problem, that of prejudgment by the finder of fact, by imposing a requirement which, unless waived by the juvenile, demands that a different judge preside at the adjudicatory hearing in the event jurisdiction is retained in the Juvenile Court. 421 U. S. at 536-537. This problem, too, more obviously implicates the due process clause than the double jeopardy clause. Cf. *Mayberry* v. *Pennsylvania,* 400 U. S. 455, 465 (1971).

With the foregoing consideration of the purposes of the *Breed* v. *Jones* rules in mind, it is plain that the defects cured by that case, despite their due process overtones, are similar to the defects cured in most Fourth Amendment exclusionary rule cases in that they raise "no question about the guilt of defendants," *Williams* v. *United*

*States,* 401 U. S. 646, 653 (1971), who were tried and convicted in the Superior Court.

In this regard, however, we must bear in mind, for retroactivity purposes, that "the question whether a constitutional rule of criminal procedure does or does not enhance the reliability of the fact-finding process . . . is necessarily a matter of degree." *Johnson* v. *New Jersey,* 384 U. S. 719, 728-729 (1966). It is a "question of probabilities and must take account . . . of the extent to which other safeguards are available." *Id.* at 729. Among the other safeguards available to juveniles in delinquency proceedings as of the time of the present petitioner's appearance in the Municipal Court were: (1) notice of the proceeding sufficiently in advance to permit preparation; (2) counsel; (3) the privilege against self-incrimination; and (4) the right to confront and cross-examine accusers. *In re Gault,* 387 U. S. 1 (1967). And under the Rules of the District Courts in effect at that time, a juvenile was entitled to the benefit of all rules applicable to adult defendants in those courts (Rule 82), as well as to the benefit of "Notice of Rights" (Rule 83). Since May 7, 1973, moreover, a transferred juvenile has had the right to "a finding in writing of the facts demonstrating that the interests of the public require such" transfer (Rule 85A). We think these other rights served to a large extent to ameliorate the problems eliminated by *Breed* v. *Jones.*

The second of the *Stovall* v. *Denno* criteria for determining retroactivity is "the extent of the reliance by law enforcement authorities on the old standards," which in turn involves the question whether the justifiability for any such reliance was or was not "dubious." Cf. *Robinson* v. *Neil,* 409 U. S. 505, 510-511 (1973). As for the extent of such reliance, speaking of Massachusetts alone,[1]

---

[1] As of the date of decision in *Breed* v. *Jones,* the Supreme Court stated that apparently Alabama and West Virginia joined Massachusetts in requiring that a hearing on the juvenile petition or complaint

it was widespread. From its effective date of May 7, 1973, to its amendment by a memorandum directive of the Chief Justice of the District Courts shortly after *Breed* v. *Jones* was decided on May 27, 1975, Rule 85A of the District Courts appears to have required that consideration of the question of transfer from juvenile to adult proceedings take place after a hearing on the juvenile complaints.[2] Therefore, it would seem that if *Breed* v. *Jones* were held to be retroactive many criminal trials which followed juvenile delinquency proceedings during that two-year period might be claimed to have violated the double jeopardy clause. Moreover, it is our understanding that Rule 85A as originally adopted was to a large extent a codification of existing practice in the District and Municipal Courts. Accordingly, criminal trials which followed juvenile delinquency proceedings before Rule 85A took effect might also be claimed to have been invalid if *Breed* v. *Jones* were held retroactive. Cf. *Tehan* v. *United States ex rel. Shott,* 382 U. S. 406, 418 (1966).

As for the justifiability of the reliance on the old standards, we do not believe it could in any sense be con-

---

precede transfer. 421 U. S. at 538 n. 19. Of course, other States may have allowed such a procedure as of that date, as *Breed* v. *Jones* demonstrates California did, and still others may have required or allowed it in the past.

[2] Nothing in G. L. c. 119, § 61, as appearing in St. 1964, c. 308, § 2, expressly prohibits a judge from considering the transfer question prior to holding an adjudicatory proceeding. The statute does, however, state in regard to the juvenile complaint that "the court may, after a hearing on said complaint, order it dismissed." We are of the view that a transfer hearing would satisfy the statutory requirement that "a hearing on said complaint" precede dismissal of that complaint. Rule 85A, as now modified, requires the following sequence: "If the court *before* the hearing on the juvenile complaint deems necessary a consideration of whether to dismiss the juvenile complaint and to try the child as an adult for the offense, the court shall, subject to a continuance if requested by the child, proceed to hold a separate hearing on this question." This sequence complies with the requirements of both the statute and *Breed* v. *Jones.*

sidered dubious. At the time we decided in *A Juvenile, petitioner,* 364 Mass. 531, 541-542 (1974), that juvenile and adult proceedings for the same offense were part of a single, "continuing jeopardy," we could find no contrary authority, and we found considerable supporting authority. And when the Supreme Court granted certiorari in *Breed* v. *Jones,* it did so "because of a conflict between Courts of Appeals and the highest courts of a number of States on the issue presented in . . . [that] case and similar issues." 421 U. S. at 527. In short, although the "continuing jeopardy" justification was found wanting in *Breed* v. *Jones,* 421 U. S. at 533-534, it had theretofore been accepted by this and the majority of other courts which had considered the issue.

The third and last of the *Stovall* v. *Denno* criteria is "the effect on the administration of justice of a retroactive application of the new standards." The effect, in this Commonwealth at least, of a retroactive application of the new *Breed* v. *Jones* standards would be far reaching. Presumably, in many of the cases in which a defendant's criminal conviction had been preceded by a juvenile proceeding, a hearing might now be requested to determine whether the juvenile proceeding had been limited to the issue of transfer. If the juvenile proceedings had not been thus limited, and if the resulting adult convictions are required to be vacated on constitutional double jeopardy grounds, it is questionable whether the offenders may be retried. The situation here is thus substantially different from those in which a holding of retroactivity can cure past errors by mandating a new, error-free trial of a single defendant which will protect the interests of both the defendant and the public.

We believe that our decision today is consistent with *Robinson* v. *Neil,* 409 U. S. 505 (1973). That case held fully retroactive *Waller* v. *Florida,* 397 U. S. 387 (1970), in which the court had ruled that a municipal prosecution followed by a State prosecution for the same offense violated the double jeopardy clause. The court in *Rob-*

*inson* v. *Neil* drew a general distinction between double jeopardy cases and cases involving "procedural guarantees," saying: "The guarantee against double jeopardy is significantly different from procedural guarantees held in the *Linkletter* [v. *Walker*, 381 U. S. 618 (1965), limiting *Mapp* v. *Ohio*, 367 U. S. 643 (1961), to prospective effect] line of cases to have prospective effect only. While this guarantee, like the others, is a constitutional right of the criminal defendant, its practical result is to prevent a trial from taking place at all, rather than to prescribe procedural rules that govern the conduct of a trial." 409 U. S. at 509 (1973). But the court in that case also said: "We would not suggest that the distinction that we draw is an ironclad one that will invariably result in the easy classification of cases in one category or the other." *Ibid.*

As we have indicated above, we believe that *Breed* v. *Jones*, while cast in double jeopardy terms, could in several respects be considered a case prescribing "procedural guarantees." Indeed, there are several areas in which double jeopardy and due process analyses overlap in practical effect. See *North Carolina* v. *Pearce*, 395 U. S. 711 (1969); *Blackledge* v. *Perry*, 417 U. S. 21 (1974). Because of this practical overlap, an isolation of double jeopardy cases for retroactivity purposes would be artificial and unsound. Accordingly, we believe that a *Stovall* v. *Denno*-type analysis, which is used in considering whether "procedural guarantees" should have retroactive effect, is appropriately applied to *Breed* v. *Jones*. Moreover, the court in *Robinson* v. *Neil* premised its result in that case in large measure on the "dubious" justifiability of the State's reliance on lower court decisions supporting the dual-sovereign analogy (see *Bartkus* v. *Illinois*, 359 U. S. 121 [1959]). 409 U. S. at 510 (1973). The court specifically refrained from intimating any view as to the weight to be accorded in a retroactivity analysis to justifiable reliance of the sort we believe is demonstrated in the circumstances of the present

case. *Id.* at 510-511. We accord such justifiable reliance considerable weight.

2. *Ex post facto judicial action.* The petitioner's next assignment of error is that, under G. L. c. 119, § 61, "non-criminal conduct is transformed into criminal conduct after the conduct itself has ended . . . [thus transgressing] the principles underlying the ex-post-facto clause of the Constitution and consequently . . . [violating] the due process clause of the Fourteenth Amendment to the Constitution." This argument extracts certain language and reasoning of this court from *Metcalf* v. *Commonwealth,* 338 Mass. 648 (1959), and *Commonwealth* v. *Chase,* 348 Mass. 100 (1964). At the time those cases were decided, G. L. c. 119, § 52, excluded from the reach of delinquency proceedings murder in the first degree. See now G. L. c. 119, § 74. Metcalf and Chase were indicted for murder in the first degree without delinquency proceedings having first been commenced and dismissed. Both young men, however, pleaded guilty to murder in the second degree and had their pleas accepted. In reviewing the ensuing convictions, we held that the acceptance of the guilty pleas to murder in the second degree established at that point that the two juveniles were guilty of conduct for which they could not be tried as adults unless delinquency proceedings had first been commenced and dismissed. Accordingly, we concluded that the Superior Court judges had been powerless to impose sentences on the two youths. *Metcalf* v. *Commonwealth, supra,* at 653. *Commonwealth* .v. *Chase, supra,* at 104.

The petitioner points particularly to our statement in the *Metcalf* case that the acceptance of the guilty plea to murder in the second degree established that the juvenile "was guilty of conduct which, in view of his age, constituted delinquency and not a crime." 338 Mass. at 653. From this, the petitioner argues that an act committed by any person under seventeen cannot be a crime when committed, but can only become a crime

ex post facto, that is, when juvenile delinquency pro-
ceedings, having been commenced, are dismissed and
adult proceedings are begun. The quoted language from
the *Metcalf* case, however, can only be understood in
light of the fact Metcalf was less than fourteen years of
age at the time of the murder, and thus could not have
been subject *at all* to criminal proceedings for murder in
the second degree. See G. L. c. 119, § 61. While we
reached a similar result as to the validity of the sentence
in the *Chase* case, which involved a young man between
fourteen and seventeen at the time of the murder, it is
interesting to note that we did not indicate that Chase's
conduct "constituted delinquency and not a crime."

In any event, we are firmly of the view that an act
which is against the criminal law of the Commonwealth
is a criminal act at the time of its commission when it is
committed by a juvenile between the ages of fourteen
and seventeen. The procedures set up by G. L. c. 119,
§§ 61, 74, and 75, for treating youthful offenders do not
result in noncriminal acts being made criminal after the
fact. Rather, they provide a means of determining what
procedural alternative will best serve the interests of the
juvenile and of society. Indeed, § 61 itself applies by its
terms to situations in which it is alleged in a delinquency
complaint "*that a child* [between the ages of fourteen
and seventeen] *has committed an offense against a law of
the commonwealth*" (emphasis supplied), and requires
the judge to determine whether "the interests of the
public require that he should be tried for said offense" or
be "dealt with as a delinquent child."

We note that even if the petitioner's construction of our
prior cases in the juvenile delinquency area were correct,
his highly technical "ex post facto argument" would seem
to lack any solid base in constitutional law. Article 1,
§ 10, of the Constitution of the United States, forbidding
the States to "pass any . . . *ex post facto law*," "is di-
rected against legislative action only, and does not reach
erroneous or inconsistent decisions by the courts." *Frank*

v. *Mangum,* 237 U. S. 309, 344 (1915). The due process clause does, in limited circumstances, prohibit ex post facto application of judicial decisions: "If a judicial construction of a criminal statute is 'unexpected and indefensible by reference to the law which had been expressed prior to the conduct in issue,' it must not be given retroactive effect." *Bouie* v. *Columbia,* 378 U. S. 347, 354 (1964), quoting in part from Hall, General Principles of Criminal Law, 61 (2d ed. 1960).

To fall within the proscription of the *Bouie* case, it would not be sufficient that the decision to try the petitioner as an adult was made after the commission of the offense. The decision would also have had to be "unexpected and indefensible by reference to the [prior] law." The transfer decision in the present case did not fall into the category, and we actually do not understand the petitioner to argue that it did. The petitioner does assert, however, that because a juvenile does not know in advance of a violation of the criminal law whether if he is caught he will be dealt with as a delinquent child or tried as an adult, "it is virtually impossible for . . . [him] to determine in advance whether breaking and entering a building . . . [or murder] constitutes a crime." This assertion is without merit, and we see no point in discussing it beyond saying that it adds nothing to the petitioner's otherwise weak "ex post facto argument." The further claim that an ex post facto type violation inheres in every transfer decision made in "the unchanneled exercise of official discretion" allowed by § 61, is but a variation of the claim, considered below, that § 61 is unconstitutionally vague.

3. *Vagueness.* The petitioner's third assignment of error, as phrased in his brief, is that "[t]he statutory prerequisite to waiver of juvenile jurisdiction contained in § 61 — a finding that 'the interests of the public' require the juvenile to be tried as an adult — is a requirement couched 'in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as

to its application.' *Connally* v. *General Construction Co.,* 269 U. S. 385, 391 (1926)." This argument is essentially the same as one we considered and rejected in *A Juvenile, petitioner,* 364 Mass. 531, 536-539 (1974). We have not changed our opinion on this subject, and reaffirm our holding that "§ 61 is not so vague as to bar proceedings against the petitioner on an adult complaint following the dismissal of a juvenile complaint." *Id.* at 539. Nothing in *Breed* v. *Jones* casts doubt on the validity of this conclusion.

4. *Improper delegation.* The petitioner argues that § 61 permits so much judicial discretion in deciding whether to transfer a juvenile to Superior Court for trial as to constitute a delegation of legislative power to the judiciary which violates art. 30 of the Declaration of Rights of the Constitution of the Commonwealth. This argument, too, was considered and rejected in *A Juvenile, petitioner, supra.* We adhere to the view there expressed that a judge making a transfer decision under § 61 is exercising not a legislative function, but "a judicial function relating to the procedure to be selected under which an alleged violation of law will be processed." *Id.* at 537.

5. *Failure to review the petitioner's prior record and to give statement of reasons as due process and equal protection violation.* The fifth assignment of error by the petitioner is that his rights to due process and equal protection were violated "because the Municipal Court . . . failed to review, or to permit petitioner to comment upon, his prior juvenile record or on the possibility of his successful treatment as a juvenile and failed to give a statement of its reasons for dismissal of . . . [the juvenile] complaints." In considering these arguments, it is helpful to bear in mind that the United States Supreme Court "has never attempted to prescribe criteria for, or the nature and quantum of evidence that must support, a decision to transfer a juvenile for trial in adult court." *Breed* v. *Jones,* 421 U. S. 519, 537 (1975).

The claim that the court "failed . . . to permit petitioner to comment upon his prior juvenile record or on the possibility of his successful treatment as a juvenile" is without support in the record. The petitioner, who was, of course, represented by counsel, made no attempt or offer to comment on these matters. As for the suggestion that the judge was somehow obligated to consider these matters even though the petitioner, represented by counsel, declined to bring them to the judge's attention, we know of no support for such a proposition.

Even assuming both (a) that the judge was obligated to consider these matters and (b) that he did not do so, we are convinced beyond a reasonable doubt that such failure was harmless error. In short, we cannot believe that a decision to transfer the petitioner for trial as an adult on a charge of murder could have been altered by a review of the petitioner's extensive record of prior offenses and adjudications of delinquency. As for the further argument, relating to the absence of detailed findings or reasons for the decision to transfer, the hearing in this case was held prior to the adoption of Rule 85A of the Rules of the District Courts, effective May 7, 1973. An extensive statement of reasons for the judge's decision to dismiss the juvenile complaint under G. L. c. 119, § 61, was not then required. See *Commonwealth* v. *Roberts*, 362 Mass. 357, 369 (1972), *Commonwealth* v. *Franklin*, 366 Mass. 284, 287-288 (1974), and cases cited, and *Gavin* v. *Commonwealth*, 367 Mass. 331, 339-343 (1975).

6. *Failure to review the petitioner's prior record and to give statement of reasons as violation of G. L. c. 119, § 61.* The petitioner's sixth assignment of error is essentially the same as his fifth, just considered, with the exception that here it is alleged that the claimed failure of the judge to consider the petitioner's prior record and to give a statement of reasons for dismissing the juvenile complaints and issuing adult complaints amounts to a violation of G. L. c. 119, § 61. What we said in regard

to the claimed constitutional error applies here as well. There was no statutory violation.

7. *Compelling State interest.* The petitioner's final assignment of error is that "[d]ismissal of the juvenile delinquency complaints against petitioner violated his right to equal protection of the laws under the 14th Amendment . . . because no compelling reason for said dismissal was demonstrated by the Commonwealth or by the said Court." The petitioner has cited no precedent for the proposition that a compelling State interest must support a transfer decision, and we decline to create one here.

8. It follows from what we have said above that the judgment on each of the two indictments against the present petitioner is to be affirmed.

*So ordered.*