## Felix Santiago *vs.* Commonwealth.

Suffolk. June 10, 1998. - July 21, 1998.

Present: Wilkins, C.J., Abrams, Lynch, Greaney, Fried, Marshall, & Ireland, JJ.

*Statute,* Retroactive effect. *Juvenile Court,* Jurisdiction. *Practice, Criminal,* Juvenile delinquency proceeding. *Jurisdiction,* Juvenile delinquency proceeding. *Constitutional Law,* Ex post facto law, Double jeopardy. *Due Process of Law,* Retroactive application of statute. *Homicide.*

Statute 1998, c. 98, which extends the jurisdiction of the Juvenile Court over certain pending cases and which the Legislature expressly intended to have retroactive effect, is procedural in nature and does not constitute an ex post facto law under either the Federal or State Constitution. [40-42]

Principles of double jeopardy were not applicable to bar the retrial of a juvenile after his successful appeal. [42]

The principle stated in the decision of this court in *Commonwealth* v. *Santiago,* 425 Mass. 491 (1997), with respect to the criminal culpability of a person who engages in a shootout with others engaged in criminal activity which results in the death of a bystander, did not change the substantive law adversely to the juvenile in that case, and there was no constitutional prohibition against applying that principle to the juvenile at the retrial of his case after appeal. [42-44]

Civil action commenced in the Supreme Judicial Court for the county of Suffolk on February 4, 1998.

The case was reported by *Fried,* J., and, following review by this court, 427 Mass. 298 (1998), a stay of the entry of a judgment of dismissal was ordered by *Ireland,* J., in the Supreme Judicial Court for the county of Suffolk, and the matter was heard at a special session of this court.

*John P. Zanini,* Assistant District Attorney (*James W. Coffey,* Assistant District Attorney, with him) for the Commonwealth.

*Willie J. Davis* for Felix Santiago.

The following submitted briefs for amici curiae:

*Scott Harshbarger,* Attorney General, & *Carolyn D. Keshian,* Assistant Attorney General, for the Attorney General.

*Catherine E. Sullivan,* Assistant District Attorney, & *Loretta M. Lillios,* Assistant District Attorney, for Massachusetts District Attorneys' Association.

*Michael J. Sullivan*, District Attorney, & *Robert C. Thompson*, Assistant District Attorney, for the District Attorney for the Plymouth District.

*Willie J. Davis* for Stephen DiRenzo.

*Eric Brandt* for Committee for Public Counsel Services.

*John M. Thompson* for Massachusetts Association of Criminal Defense Lawyers.

ABRAMS, J. In 1996, a juvenile, Felix Santiago, was found delinquent by reason of murder in the first degree as well as other charges. In 1997, we reversed the juvenile's adjudication of delinquency because of the prosecutor's improper closing argument and ordered a new trial. *Commonwealth* v. *Santiago*, 425 Mass. 491 (1997) (*Santiago I*). Shortly thereafter, the juvenile, who had reached the age of nineteen, argued in the Juvenile Court that he had "aged out" of the Juvenile Court's jurisdiction under the law as it existed at the time of his alleged offense. See G. L. c. 119, § 72 (1994 ed.) (providing that Juvenile Court has no jurisdiction over a juvenile after his or her nineteenth birthday). The Juvenile Court judge disagreed, concluding that a 1996 amendment provided for jurisdiction. See G. L. c. 119, § 72, as amended by St. 1996, c. 200, § 13 (*b*) (extending jurisdictional age limit to twenty-one years). The juvenile petitioned a single justice of this court under G. L. c. 211, § 3, and the single justice reserved and reported the matter to this court. We concluded that the amending statute, enacted after the alleged offense, did not apply to this juvenile because the Legislature explicitly did not intend it to be retroactive. Accordingly, we ordered that the indictment be dismissed. *Santiago* v. *Commonwealth*, 427 Mass. 298 (1998) (*Santiago II*). On the Commonwealth's motion, a single justice of this. court stayed the dismissal of the indictment. The Legislature then enacted St. 1998, c. 98, which purports to extend the Juvenile Court's jurisdiction retroactively so as to cover, among others, the juvenile's case. See St. 1998, c. 98, §§ 3, 5. We heard the parties on issues arising from St. 1998, c. 98, §§ 3 and 5. The juvenile argues that c. 98 is an ex post facto law in violation of art. I, § 9, of the United States Constitution and art. 24 of the Massachusetts Declaration of Rights, and that retrial would subject him to double jeopardy. We disagree. We remand the case to the Juvenile Court for trial.

It is plain that the Legislature intended §§ 3 and 5 of c. 98 to

have retroactive effect.[1] The juvenile's case was "properly commenced in juvenile court," the crime was "allegedly committed between December 31, 1991 and September 30, 1996," and final adjudication was still pending due to the stay of the dismissal.[2] Therefore, the Juvenile Court has jurisdiction pursuant to c. 98 to retry the juvenile's case, if c. 98 is valid.[3] We conclude that it is.

In the "primordial" case of *Calder* v. *Bull*, 3 U.S. (3 Dall.) 386 (1798), the Supreme Court identified four kinds of criminal laws as ex post facto: "1st. Every law that makes an action done before the passing of the law, and which was *innocent* when done, criminal; and punishes such action. 2d. Every law that *aggravates* a *crime*, or makes it *greater* than it was, when committed. 3d. Every law that *changes the punishment*, and inflicts a *greater punishment* than the law annexed to the crime, when committed. 4th. Every law that alters the *legal* rules of *evidence*, and receives less or different testimony than the law required at the time of the commission of the offence, *in order to convict the offender.*" (Emphasis in original.) *Id.* at 390. See *Collins* v. *Youngblood*, 497 U.S. 37, 42-43, 47-52 (1990) (reaffirming that *Calder* provides the authoritative interpretation of the Federal ex post facto clause and overruling cases to the contrary); *Commonwealth* v. *Bargeron*, 402 Mass. 589, 590-591 (1988). As we noted in *Santiago II*, supra at 301, we have treated the Federal and State ex post facto clauses identically.

---

[1]Chapter 98 of St. 1998 provides, in relevant part: "SECTION 3. Notwithstanding any language contained in [G. L. c. 119, § 72,] relating to the age limitation for persons over whom the juvenile court may exercise power and authority . . . the divisions of the juvenile court department and the juvenile sessions of the trial courts shall continue to have jurisdiction over persons whose cases were properly commenced in juvenile court, regardless of the current age of the person charged, pending final adjudication of such cases, including all remands and retrials following appeals from such cases

. . . .

"SECTION 5. Section 3 of this act shall apply to complaints filed and indictments returned for offenses allegedly committed between December 31, 1991 and September 30, 1996, inclusive . . . ."

[2]Statute 1998, c. 98, cannot apply, however, to defendants whose cases were dismissed before the statute was enacted. The Legislature may not revive jurisdiction over a case that has already been dismissed. Cf. *Commonwealth* v. *Rocheleau*, 404 Mass. 129, 130-131 (1989).

[3]The Commonwealth also argues that, pursuant to G. L. c. 211, §§ 4A, 8, and 14, we can try the juvenile in this court or transfer the case to the Superior or Juvenile Court. Although this claim may provide an alternate basis for jurisdiction, we do not rely on it nor do we discuss it.

Chapter 98, which extends the Juvenile Court's jurisdiction, is procedural in nature and does not fall into any of the *Calder* categories. It neither renders previously innocent conduct criminal, nor retroactively increases the penalty for a crime, nor alters the evidentiary standard in such a way as to make conviction easier. We therefore conclude that c. 98 is not an ex post facto law under either the Federal or State Constitution. See *Santiago II, supra* at 301 (statute increasing jurisdictional age limit not ex post facto); *Bargeron, supra* (statute extending limitations period not ex post facto).

Although both the statutes setting the Juvenile Court's age limits and statutes of limitations prescribe time limits, they do not operate in the same way. The former are jurisdictional, defining and limiting only the Juvenile Court's power over the individual. See *Santiago II, supra* at 302 (discussing "the Juvenile Court's jurisdictional limits as . . . prescribed by the Legislature"). Statutes of limitations, by contrast, impose a time limit on the prosecution. When a statute of limitations expires, the case is dead, and the Legislature may not revive it by amending the statute of limitations. *Commonwealth* v. *Rocheleau*, 404 Mass. 129, 130-131 (1989). When a juvenile reaches the age limit, the case is still alive until judgment enters resolving the case. Thus, there is no reason why the Legislature may not extend the Juvenile Court's jurisdiction over pending cases. Moreover, because there is no statute of limitations in a murder case, there was no bar to trying the juvenile in the Juvenile Court. See *D'Urbano* v. *Commonwealth*, 345 Mass. 466, 467-472 (1963). At all times, therefore, there was a court with jurisdiction over the juvenile. In c. 98, the Legislature merely added another court. Accordingly, the juvenile may be retried in the Juvenile Court pursuant to c. 98.

1. We reject the juvenile's contention that retrial would subject him to double jeopardy. *Breed* v. *Jones*, 421 U.S. 519 (1975), on which the juvenile relies, involved a juvenile who was transferred to his State's adult courts for a second trial after being adjudicated delinquent in a Juvenile Court. By contrast, this case involves a retrial after the juvenile's successful appeal in *Santiago I, supra*. This case presents no double jeopardy issue.

2. Our disposition requires us to consider another argument advanced by the juvenile. In *Santiago I, supra* at 503-504, we rejected the juvenile's argument that, because the Com-

monwealth could prove neither that he instigated the shootout in which a bystander was killed nor that he fired the fatal shot, he was entitled to a required finding of not guilty. We stated that "[b]y choosing to engage in a shootout, a defendant may be the cause of a shooting by either side because the death of a bystander is a natural result of a shootout, and the shootout could not occur without participation from both sides." *Id.* at 504. The juvenile argues that application of this principle to him at retrial would violate the ex post facto prohibition. We disagree.

The constitutional prohibition of ex post facto laws "is directed against legislative action only, and does not reach erroneous or inconsistent decisions by the courts." *Stokes* v. *Commonwealth*, 368 Mass. 754, 772 (1975), quoting *Frank* v. *Mangum*, 237 U.S. 309, 344 (1915). The due process clause, however, prohibits retroactive application of a judicial decision "[i]f a judicial construction of a criminal statute is 'unexpected and indefensible by reference to the law which had been expressed prior to the conduct in issue.' " *Stokes, supra* at 773, quoting *Bouie* v. *Columbia*, 378 U.S. 347, 354 (1964). See *Commonwealth* v. *Moreira*, 388 Mass. 596, 601 (1983), quoting *State* v. *Koonce*, 89 N.J. Super. 169, 185 (1965) ("[I]t would be fundamentally unjust to render criminal, by an overruling decision, conduct which was not criminal when it occurred. This would be equivalent in effect on the accused of an *ex post facto* statute"). Applying these principles, we conclude that the law set forth in *Santiago I, supra,* may be applied to the juvenile.

The juvenile relies primarily on *Commonwealth* v. *Campbell*, 7 Allen 541 (1863), to support the argument that *Santiago I* worked a change in the law. In *Campbell*, a person was killed during a shootout between rioters, including the defendant, and soldiers who had been called out to suppress the riot. It could not be determined whether a rioter or a soldier had fired the fatal shot. We held that "[n]o person can be held guilty of homicide unless the act is either actually or constructively his, and it cannot be his act in either sense unless committed by his own hand or by some one acting in concert with him or in furtherance of a common object or purpose," *id.* at 544, and directed that the jury "be instructed that, unless they [were] satisfied beyond a reasonable doubt that the deceased was killed by means of a gun or other deadly weapon in the hands of the prisoner, or of one of the rioters with whom he was associated

and acting, he [was] entitled to an acquittal." *Id.* at 547-548. We reaffirmed this position in *Commonwealth* v. *Balliro,* 349 Mass. 505, 515 (1965), another case involving a shootout between persons engaged in criminal activity and law enforcement officials attempting to quash that activity.

By contrast, the juvenile's opponent in the shootout, rather than attempting to put a stop to criminal activity, was engaged in it himself. *Campbell* and *Balliro* accordingly cannot be said to have precluded, or to have been overruled by, *Santiago I.* Indeed, there is language in *Campbell* undermining the juvenile's position. See *Campbell, supra* at 547 (distinguishing an "obscurely and imperfectly reported" riot case: "both parties or sides had a common object in view, namely, a breach of the peace, and that both went out by an agreement or mutual understanding to engage in an affray or riot. . . . [A]s in the case of a duel, although to accomplish the common purpose they took opposite sides, still they might all well have been deemed to have confederated together in an unlawful enterprise, and thus to have become responsible . . . for a criminal act done in pursuance of the common design by any one of their confederates, with whichever side he may have acted in the affray"). The juvenile cannot reasonably argue that his participation in the shootout was innocent at the time and only became criminal after our decision in *Santiago I.* See *Santiago II, supra* at 300 nn.5-6.[4] We conclude that *Santiago I* did not change the substantive law adversely to the juvenile.[5] There is no constitutional prohibition against retrying the juvenile on the theory set forth in *Santiago I.*

3. Our order dismissing the indictment is vacated. The case is remanded to the Juvenile Court for trial.

*So ordered.*

---

[4]We emphasize that *Santiago I* does not contemplate holding the juvenile liable for his opponent's acts on a joint venture theory. Rather, *Santiago I* states that the juvenile may be found delinquent for *his own* act, namely, engaging in the shootout that caused the victim's death.

[5]Because this case is distinguishable on its facts from *Commonwealth* v. *Campbell,* 7 Allen 541 (1863), we have no need to reconsider the *Campbell* holding. However, we express grave doubt as to the continuing validity of the principle set forth in *Campbell.*