In April 2017, a Superior Court jury convicted the defendant of indecent assault and battery on a person fourteen years of age or older.[2] On the defendant's appeal, we affirm.
Background. On the evening of June 19, 2016, a group of teenagers attended a local carnival. The group included the sixteen year old victim, Jane Doe, and a classmate to whom we refer as Karen.[3] Accompanying the teenagers to the carnival were Karen's mother and the defendant (the mother's thirty-seven year old boy friend).[4] Afterwards, the group gathered at Karen's Fall River home. The teenagers sat around a fire pit in the backyard for several hours, "joking, talking," and watching Youtube videos on their cellular telephones (cell phones). The defendant also sat by the fire and consumed several alcoholic beverages over the course of the night.
At one point, Karen wanted to show the group a video on her cell phone, so she stood in front of a swinging bench where Jane was sitting, and everyone huddled around Karen to see the screen. According to Jane's testimony, the defendant, who had been watching the video from behind the swinging bench, reached over the top of the swinging bench and "cupped" her vagina for two or three seconds. Mark, a boy who had been seated next to Jane on the bench, also testified that he saw the defendant "reach over and grab [Jane's] ... vagina." Jane testified that after the defendant assaulted her, he began talking about how she could get the "things [she] wanted in life through ... sexual favors."
According to Jane and Mark, the defendant then returned to the other side of the fire pit and became agitated, allegedly yelling at two of the other teenage boys and attempting to fight them. Meanwhile, Jane sat quietly in shock, and eventually broke down crying. Mark texted Karen (who had since gone into the house) that she should get her mother because the defendant was "out of hand."
Eventually, Karen, Mark, Jane, and the two other boys left the house and went for a walk around the neighborhood. On the walk, Mark told Karen what had happened to Jane, who agreed with his rendition of the incident. Karen called her neighbor, who was slightly older than the group of teenagers, who then called the police to report the assault. The responding police officer conducted interviews and placed the defendant under arrest.
Discussion. The defendant asserts three arguments on appeal, which we address in turn.
1. Prosecutor's closing argument. The defendant asserts that the prosecutor made various improper statements in her closing argument. Because the defendant never objected at trial, we review only for a "substantial risk of a miscarriage of justice." Commonwealth v. Freeman, 352 Mass. 556, 564 (1967).
We disagree that the prosecutor improperly bolstered Jane's credibility, or unfairly attacked the defendant or his counsel. A prosecutor is allowed to marshal the evidence that supports a conviction, and to argue the strength of that evidence. We discern no impropriety in such arguments here, much less a substantial risk of a miscarriage of justice. See id.
We also disagree that it was improper for the prosecutor to mention Jane's youth and the age disparity between her and the defendant. These facts were relevant, e.g., to explain Jane's reaction to the assault. Moreover, we disagree with the defendant that such age references are comparable to those held to constitute an improper play on the jury's sympathies. Compare Commonwealth v. Santiago, 425 Mass. 491, 494 (1997), S.C., 427 Mass. 298 and 428 Mass. 39, cert. denied, 525 U.S. 1003 (1998) (prosecutor improperly appealed to jurors' sympathies by repeating murder victim's age over twelve times and by referring to her pregnancy and upcoming birthday throughout trial).
2. Prior bad acts. The defendant next argues that the judge abused his discretion by allowing testimony about the defendant's alleged "prior bad acts," namely the sexual comments he made to the victim immediately following the assault, and his subsequent aggression towards the teenage boys. The defendant never objected at trial, so we review for a substantial risk of a miscarriage of justice. See Freeman, 352 Mass. at 564.
We find the defendant's arguments unpersuasive. Although evidence of prior or subsequent bad acts is inadmissible as propensity evidence, it is well established that such evidence may be admissible to show " 'motive, opportunity, intent, preparation, plan, knowledge, identity, or pattern of operation,' [ Commonwealth v.] Walker, 460 Mass. [590,] 613 [2011], [so long as the] probative value is [not] outweighed by the risk of unfair prejudice to the defendant." Commonwealth v. Crayton, 470 Mass. 228, 249 (2014). Here, Jane's testimony concerning the defendant's sexual comments plainly was admissible to show the defendant's state of mind at the time of the assault, since the comments were essentially contemporaneous to the assault itself.
We similarly find no error, much less a substantial risk of a miscarriage of justice, in the judge's allowing testimony about the defendant's aggression toward the teenage boys immediately following the incident. "The 'prosecution [is] entitled to present as full a picture as possible of the events surrounding the incident[s]' at issue." Commonwealth v. Holloway, 44 Mass. App. Ct. 469, 476, (1998), quoting Commonwealth v. Sevieri, 21 Mass. App. Ct. 745, 756 (1986). Testimony about the defendant's aggressive behavior corroborated the evidence that he was under the influence of alcohol, and was relevant to show his state of mind that evening. See Crayton, 470 Mass. at 249.
3. Backdoor first complaint testimony. Finally, the defendant argues that the Commonwealth put forth improper "backdoor first complaint testimony," specifically testimony from the police officer, Jane, and Karen regarding the repeating of Jane's allegations to others. We first address whether such an argument was preserved in the trial court. The defendant raised no objection to such testimony at trial. However, citing Commonwealth v. Grady, 474 Mass. 715, 719 (2016), the defendant argues that such arguments nevertheless were preserved by his having raised them in a motion in limine he filed prior to trial. We disagree.
In Grady, the Supreme Judicial Court explained that when a judge rules against a party in a pretrial motion in limine, the party is excused from objecting again at trial. Id. That is not what happened here. Seeking to prevent unnecessary repetition of Jane's allegations, the defendant filed a pretrial motion in limine "to preclude 'piling on' testimony by witnesses." In that motion, he argued, for example, that because it was not clear who the "true [f]irst [c]omplaint witness" was, Jane should not be allowed to testify that she told both Mark and the police officer about the assault. The prosecutor responded by noting that she did not think the problem that concerned the defendant would materialize (especially given that Mark himself was an eyewitness to the assault). The judge concurred with this assessment. He then nominally allowed the defendant's motion "at this time," while noting that "if there's an issue or concern ... [the lawyers should] bring it to [his] attention."
In the case before us, although the motion judge's ruling emits some confusion,[5] it in any event remains clear that the judge did not reject the defendant's arguments that "piling on" evidence be excluded. To the contrary, the motion judge explicitly invited the defendant to re-raise the issue should the problem materialize at trial. This is thus not a case where the defendant's failure to object is excused under Grady. Our review therefore is limited to whether the admitted evidence caused a substantial risk of a miscarriage of justice. See Commonwealth v. McCoy, 456 Mass. 838, 850 (2010) (where defendant did not object to cumulative first complaint testimony, the error did not create a substantial risk of a miscarriage of justice). Moreover, to the extent that the admitted testimony included unnecessary repetition of Jane's allegations, it was primarily the defense counsel who was responsible. The prosecutor was careful to avoid potential first complaint issues, and it was defense counsel who focused on the details of the witnesses' interactions with the police officer (presumably to support his theory that the police investigation was inadequate).
In any event, any unnecessary repetition of Jane's allegations did not create a substantial risk of a miscarriage of justice. Freeman, 352 Mass. at 564. The trial turned on whether the jury believed Jane's and Mark's eyewitness testimony about the incident, and both were subjected to robust cross-examination. We are confident that any stray testimony about how Jane's and Mark's allegations reached the police did not affect the jury's verdict.[6]
Judgment affirmed.

Prior to appealing, the defendant filed a motion for new trial, which was denied. The defendant did not appeal from the order denying his new trial motion.

We have used pseudonyms for all minors.

There was some testimony that the defendant and Karen's mother are now married. Nothing turns on this.

A different judge presided over the trial. Before the trial began, the trial judge admitted that he was "not quite sure what it was that [the motion judge] was allowing [with the motion in limine] other than a general request ... for the Commonwealth not to put on repetitive ... first complaint witnesses." After the prosecutor assured the trial judge that she did not "have any intention of asking Mark what the complaining witness told him about what happened," the judge proceeded to trial.

Nor is there any merit to the defendant's claim that reversal is required because the jury heard that the police arrested the defendant after they interviewed Jane (and therefore that they must have found her credible).