COMMONWEALTH *vs.* A JUVENILE (No. 2).

Suffolk.   March 4, 1976. — July 15, 1976.

Present: HENNESSEY, C.J., REARDON, QUIRICO, BRAUCHER, & KAPLAN, JJ.

*Constitutional Law,* Double jeopardy, Retroactive effect of decision. *Delinquent Child. Jurisdiction,* Delinquent child. *Superior Court,* Jurisdiction. *Practice, Criminal,* Double jeopardy, Binding over for trial, Retroactive effect of decision.

Where dismissal of juvenile complaints following an adjudicatory hearing in a Municipal Court occurred before the decision of the United States Supreme Court in *Breed v. Jones,* 421 U.S. 519 (1975), subsequent prosecution of the defendant as an adult in the Superior Court did not violate the Fifth Amendment bar against double jeopardy. [681-683]

INDICTMENTS found and returned in the Superior Court on May 16, 1975.

A motion to dismiss the indictments was heard by *Dwyer,* J., and reported by him to the Appeals Court. The Supreme Judicial Court granted a request for direct review.

*William P. Homans, Jr. (Russell K. Dunning* with him) for the defendant.

*Joseph I. Mulligan, Jr.,* Assistant District Attorney, for the Commonwealth.

HENNESSEY, C.J. In this case, we again confront a question that arises in the wake of the United States Supreme Court's decision in *Breed* v. *Jones,* 421 U.S. 519

(1975),[1] which held that the prosecution of a defendant in the Superior Court, after an adjudicatory proceeding in a Juvenile Court, constitutes double jeopardy in violation of the Fifth Amendment to the United States Constitution. *Id.* at 541. The juvenile defendant in the present case has filed a motion to dismiss the indictments brought in the Superior Court charging him with murder and unarmed robbery, alleging that a trial on these indictments is contrary to *Breed.* He contends that the pending prosecution in the Superior Court is barred by the principle of double jeopardy because he has been put in former jeopardy as a result of the determination made in the Municipal Court of the Brighton District on April 1, 1975, to dismiss the juvenile complaints and to try him as an adult. A Superior Court judge reported the case without decision to the Appeals Court under the provisions of G. L. c. 278, § 30A, and G. L. c. 211A, § 10. This court granted direct appellate review of the Superior Court report.

We do not decide if the hearing which was held in the Municipal Court on April 1, 1975, constituted an adjudicatory hearing, but rather we assume arguendo that it did. Therefore, we address only the question whether a trial on the indictments in the Superior Court would violate the Fifth Amendment ban on double jeopardy. We hold that the pending prosecution of the defendant is not barred by the principle of double jeopardy, for the court's holding in *Breed* is not applicable to juvenile proceedings which were conducted prior to the date of that decision on May 27, 1975.

We need not recount in detail the circumstances surrounding the defendant's hearing in the Municipal Court, for we will assume, without deciding, that this proceeding was a trial on the merits. Nevertheless, the facts as reported by the trial judge may be summarized briefly as follows.

About 9:10 A.M. on March 12, 1975, two young men

---

[1] See *Stokes* v. *Commonwealth,* 368 Mass. 754 (1975). Cf. *A Juvenile* v. *Commonwealth, ante,* 272 (1976).

snatched a handbag from Helen Murphy. She fell to the sidewalk, where she was later found lying unconscious.

Subsequently, a juvenile complaint was issued alleging that the defendant was a delinquent by reason of unarmed robbery of Helen Murphy. After counsel was appointed for the defendant, he was arraigned in the Municipal Court. On March 21, 1975, the victim having died, a second juvenile complaint was issued pursuant to G. L. c. 119, § 54, and G. L. c. 265, § 1, charging the defendant with delinquency by reason of murder.

Following defense counsel's filing of motions for sequestration of witnesses and for suppression of evidence, a hearing was conducted on April 1, 1975, on the two juvenile complaints. Evidence on the motion to suppress was heard concurrently. At the time of this hearing, Rule 85A of the Rules of the District Courts entitled "Dismissal of Juvenile Complaint and Trial of Child as an Adult," was in effect, having been adopted effective May 7, 1973.[2]

The assistant district attorney, on behalf of the Commonwealth, called several witnesses and introduced in evidence an allegedly incriminating statement by the defendant; a death certificate; testimony by police officers as to the investigation of the incident, the defendant's arrest and the recovery of evidence; and a stipulation containing anticipated testimony of a witness who had arrived at the scene immediately after the handbag snatching. The appointed counsel for the defendant cross-examined the Commonwealth's witnesses and called one defense witness, a teacher of a bilingual class at the defendant's school. An

---

[2] Rule 85A of the Rules of the District Courts, which governed the hearing on April 1, 1975, provided in part: "If the court after the hearing on the juvenile complaint deems necessary a consideration of whether to dismiss the juvenile complaint and to try the child as an adult for the offense, the court shall, subject to a continuance if requested by the child, proceed to hold a separate hearing on this question...." See generally *A Juvenile, petitioner,* 364 Mass. 531 (1974).

Subsequently, Rule 85A was altered by the Chief Justice of the Massachusetts District Courts shortly after *Breed.* Under the amended Rule 85A, in accordance with *Breed,* a District Court judge was required to hold a transfer hearing prior to any adjudicatory hearing. See *A Juvenile* v. *Commonwealth, ante,* 272, 275-277 (1976).

adult defendant, whose case was heard concurrently with that of the defendant, introduced the testimony of at least one witness.

At the close of the evidence, the defendant's counsel made a closing statement requesting the court to rule favorably on his motion to suppress evidence and to find the defendant not delinquent. Thereafter, the presiding judge denied the motion and indicated that he was going to dismiss the juvenile complaints.[3] Defense counsel took no further action, whereupon the judge dismissed the juvenile complaints and caused adult complaints to issue.[4]

Adult complaints were issued on April 1, 1975, charging the defendant with murder and unarmed robbery. The defendant was arraigned and, at the arraignment, he waived an adult probable cause hearing. He was thereupon bound over to the grand jury and indicted for the above offenses. Following a hearing on the defendant's motion to dismiss the indictments and before a trial on the merits, the Superior Court judge reported the case in view of the serious and substantial questions of law involved.[5]

---

[3] In an affidavit offered and accepted in evidence at the hearing on the defendant's motion to dismiss the indictments, the presiding judge at the Municipal Court hearing stated: "I was aware of the provisions of G. L. c. 119, sec. 52-61 inclusive and sec. 74, as well as the provisions of Rule 85A . . . as it then read. I understood Rule 85A to require first a hearing on juvenile complaints . . . prior to a hearing on the question as to whether a child would be tried as an adult, second, a separate hearing on whether the child would be tried as an adult; and third, if a determination were to be made that such child would be tried as an adult, that the case be set down for a probable cause hearing on the adult criminal complaint, if any. It was my practice to adhere to these requirements, and I know of no reason why I did not in the case of these two complaints. . . ."

[4] The reason cited by the judge for dismissing the juvenile complaints was the "[n]ature of the offense charged, such as its seriousness."

[5] In his report, the trial judge posed the following questions:

"1. Was the hearing accorded the juvenile defendant on April 1, 1975 at the Municipal Court of the Brighton District an adjudicatory hearing?

"2. Is the pending prosecution of the juvenile defendant by indictment in the Superior Court barred by the principle of Double Jeopardy?"

Commonwealth *v.* A Juvenile (No. 2).

In deciding whether the prosecution of the defendant in the Superior Court would constitute double jeopardy, we begin by noting that in *Stokes* v. *Commonwealth,* 368 Mass. 754 (1975), we concluded that *Breed* was not to be given retroactive effect. *Id.* at 764. Nevertheless, the defendant argues that *Stokes* is not dispositive, for in the instant case the criminal trial in the Superior Court has not yet taken place, whereas in *Stokes* all proceedings had been completed prior to *Breed.* The defendant argues that the question presented here is not whether to apply *Breed* retroactively, but, rather, whether to apply it prospectively to those defendants who have been subjected to an adjudicatory juvenile proceeding before *Breed* but are still awaiting trial for the same offense in the Superior Court.

While we may agree with the defendant's characterization of the problem as involving the prospectivity of *Breed,* we do not believe that this statement of the issue necessarily leads to the conclusion urged by the defendant. In determining the cutoff date for the application of a new constitutional doctrine, "there is a large measure of judicial discretion involved ...." *Jenkins* v. *Delaware,* 395 U.S. 213, 218 (1969), quoting from *State* v. *Vigliano,* 50 N.J. 51, 65-66 (1967). As noted by the Supreme Court in *Williams* v. *United States,* 401 U.S. 646 (1971), "there is no inflexible constitutional rule requiring in all circumstances either absolute retroactivity or complete prospectivity for decisions construing the broad language of the Bill of Rights." *Id.* at 651.[6]

---

[6] In *Linkletter* v. *Walker,* 381 U.S. 618 (1965), the Court held *Mapp* v. *Ohio,* 367 U.S. 643 (1961), applicable to cases still pending on direct review on the date of *Mapp.* A similar approach was adopted in *Tehan* v. *Shott,* 382 U.S. 406 (1966), with respect to the prospectivity of *Griffin* v. *California,* 380 U.S. 609 (1965). In *Johnson* v. *New Jersey,* 384 U.S. 719 (1966), when abandoning the *Linkletter* approach and applying *Miranda* v. *Arizona,* 384 U.S. 436 (1966), and *Escobedo* v. *Illinois,* 378 U.S. 478 (1964), to trials begun after the date these decisions were announced, the Court noted that "there are no jurisprudential or constitutional obstacles" to the adoption of a rule establishing a

Despite this latitude in deciding the time at which a new constitutional principle is to be controlling, the Supreme Court has in recent decisions begun to adopt a consistent approach whereby "the moment at which the discarded standards were first relied upon" is regarded as determinative. *Jenkins* v. *Delaware, supra* at 218.[7] "The point of reliance is critical, not because of any constitutional compulsion, but because it determines the impact that newly articulated constitutional principles will have upon convictions obtained pursuant to investigatory and prosecutorial practices not previously proscribed." *Ibid.* In addition, as sugested by the court, emphasizing the point of initial reliance as the operative event is "consistent with the fundamental justification for not applying newly enunciated constitutional principles retroactively," *Id.* at 218-219 n.7,[8] and therefore is consistent with our ra-

different cutoff point. 384 U.S. at 733.

For a summary of the early cases dealing with prospectivity, see *Desist* v. *United States,* 394 U.S. 244, 270-271 n.2 (1969) (Fortas, J., dissenting).

[7] This trend of emphasizing the point at which law enforcement officials relied on practices not yet proscribed began with *Johnson* v. *New Jersey, supra* (see n.6). See *Jenkins* v. *Delaware, supra* at 218-219 n.7. Following *Johnson,* the Court focused on the point of initial reliance. *Ibid.* See, e.g., *Stovall* v. *Denno,* 388 U.S. 293 (1967) (*United States* v. *Wade,* 388 U.S. 218 [1967], and *Gilbert* v. *California,* 388 U.S. 263 [1967], apply only to cases in which the illegal official conduct took place after the date of decision); *Desist* v. *United States,* 394 U.S. 244 (1969) (*Katz* v. *United States,* 389 U.S. 347 [1967], applies to cases where the illegal electronic surveillance occurred after *Katz*); *Jenkins* v. *Delaware, supra* (the standards set forth in *Miranda* v. *Arizona,* 384 U.S. 436 [1966], for determining the admissibility of in-custody statements do not govern post-Miranda retrials of cases originally tried prior to that decision); *Williams* v. *United States, supra* (*Chimel* v. *California,* 395 U.S. 752 [1969], is not applicable to searches conducted prior to the date of *Chimel*); and *Adams* v. *Illinois,* 405 U.S. 278 (1972) (*Coleman* v. *Alabama,* 399 U.S. 1 [1970], applies to preliminary hearings held after the date of decision in *Coleman*).

[8] This technique of prospective overruling from the moment of initial reliance reflects the thinking of Chief Justice Schaefer of the Supreme Court of Illinois, who observed: "Sound growth can be promoted and erratic results avoided by focusing attention on the element of reliance that justifies the technique. . . . [T]he area of disaffection will be narrowed if time before and time after are measured from the moment of reliance." Schaefer, The Control of "Sunbursts": Techniques of Prospective Overruling, 42 N.Y.U.L. Rev. 631, 646 (1967).

tionale in *Stokes* for not applying *Breed* retroactively.

Examining the case before us in light of the above analysis, we conclude that reliance, as that term has been applied in recent Supreme Court cases, first occurred on April 1, 1975, when the Municipal Court judge conducted an adjudicatory juvenile hearing. It was at that moment that the situation became irreversible, for by subjecting the defendant to former jeopardy in the Municipal Court, any subsequent trial would necessarily constitute double jeopardy under the reasoning of *Breed*. Accordingly, it is logical to consider April 1, 1975, the date of the juvenile proceeding, as the date of the "prohibited practice," and, therefore, the crucial point when determining the applicability of the newly formulated constitutional standards. See *Jenkins* v. *Delaware, supra* at 217.

Once it is determined that the relevant moment of reliance occurred prior to the court's decision in *Breed* on May 27, 1975, it follows that *Breed* should not be applicable, since it was permissible under the then existing law to hold such an adjudicatory hearing.[9] Therefore, we hold that *Breed* applies only to a juvenile adjudicatory hearing commenced after May 27, 1975, and since the defendant's hearing occurred prior to that date, we decide that his pending prosecution in the Superior Court is not barred by the principle of double jeopardy. Accordingly the defendant's motion is to be denied, and the indictments are to stand for trial in the Superior Court.

*So ordered.*

---

[9] As we noted in *Stokes* v. *Commonwealth, supra* at 768-769, it was justifiable for the Municipal Court judge in this case to rely on pre-*Breed* standards considering the state of the law in the Commonwealth (See *A Juvenile, petitioner,* 364 Mass. 531 [1974] [Mass. Adv. Sh. (1974) 61]) as well as in the majority of other jurisdictions which had considered the issue.