COMMONWEALTH *vs.* A JUVENILE.

Middlesex.    December 6, 1976. — February 18, 1977.

Present: HENNESSEY, C.J., QUIRICO, BRAUCHER, KAPLAN, & WILKINS, JJ.

*Delinquent Child. Constitutional Law,* Double jeopardy. *Practice, Criminal,* Double jeopardy, Juvenile delinquency proceedings.

Where dismissal of juvenile complaints after an adjudicatory hearing in a District Court occurred prior to the United States Supreme Court's decision in *Breed* v. *Jones,* 421 U.S. 519 (1975), and where the Commonwealth obtained no benefit from any disclosure made by the defendant at the hearing on the merits of the juvenile complaint, subsequent prosecution of the defendant as an adult in the Superior Court did not violate the Fifth Amendment bar against double jeopardy. [43-46]

INDICTMENTS found and returned in the Superior Court on April 17, 1975.

Questions of law were reported to the Appeals Court by *Hallisey,* J. The Supreme Judicial Court granted a request for direct review.

*Andrew Good* for the defendant.

*Peter W. Agnes,* Assistant District Attorney, for the Commonwealth.

QUIRICO, J.    This is one more in the continuing line of cases concerning the effect of the decision in *Breed* v. *Jones,* 421 U.S. 519 (1975), on the right of the Common-

wealth to prosecute indictments which evolved from juvenile delinquency proceedings initiated prior to that decision. A judge of the Superior Court has reserved and reported, without decision and on the basis of a stipulation of material facts, the three following questions: "1. Was the hearing accorded the juvenile defendant before the juvenile session of the Third District Court of Eastern Middlesex on February 6, 1975, an adjudicatory hearing within the meaning of that term as it appears in *Breed* v. *Jones,* . . . [421 U.S. 519 (1975)]? 2. Is the pending prosecution of the juvenile defendant upon these indictments in the Superior Court barred by the prohibition against double jeopardy in the Fifth and Fourteenth Amendments to the Constitution of the United States of America? 3. Should the case be remanded to the District Court?"

The report was originally made to the Appeals Court and we thereafter granted direct appellate review. G. L. c. 211A, § 10 (A).

A brief summary of the facts stipulated will be helpful. On February 6, 1975, a District Court judge sitting on juvenile cases held a hearing on four complaints alleging that the juvenile in question (juvenile) was delinquent by reason of having committed rape, unnatural and lascivious acts, burglary and armed robbery. The Commonwealth presented witnesses who were cross-examined by counsel for the juvenile. The juvenile presented no evidence. The hearing as described in the stipulation of material facts appeared to be a hearing on the merits of the complaint, and it was so described by the judge. At the close of the hearing, counsel for the juvenile argued that the evidence was insufficient, particularly as to identification, to permit a finding that the juvenile was a delinquent. The hearing was continued, without decision, to February 20, 1975. On the latter date a second judge then sitting on juvenile cases in that court heard additional evidence by way of reports and heard arguments of counsel as to whether or not the juvenile complaints should be dismissed. On February 27, 1975, he ordered that the juvenile complaints be dismissed and that adult complaints be issued, and they

did issue. On March 27, 1975, a third judge sitting in the same District Court held a probable cause hearing on the adult complaints, found probable cause, and bound over the defendant, herein previously referred to as the juvenile, to the grand jury. On April 7, 1975, the grand jury returned indictments against the defendant on each of the four charges involved in the original juvenile complaints. Prior to May 27, 1975, when the case of *Breed* v. *Jones, supra,* was decided, the defendant had been arraigned and pleaded not guilty to each indictment, and he had filed various preliminary motions, but there had been no trial of the cases. Trial has been stayed pending disposition of the report now before us.

The extent to which juvenile delinquency proceedings entitled the accused to the defense of double jeopardy in a later prosecution as an adult for alleged crimes arising out of the same incident has been the subject of several of our recent decisions.

In *A Juvenile, petitioner,* 364 Mass. 531 (1974), a juvenile complaint alleging delinquency by reason of an attempt to steal a motor vehicle was dismissed by a judge of the District Court, an adult complaint then issued charging the juvenile with the same attempted larceny, and the defendant admitted to sufficient facts to warrant a guilty finding. The defendant was found guilty, received a suspended sentence thereon, and was placed on probation. When he was later surrendered for violation of his probation, he questioned the validity of his conviction on several grounds including a claim of double jeopardy. We reversed the conviction on the ground that "[a]fter a juvenile complaint has been dismissed and an adult complaint has been issued, the only function of a District Court is to hold a probable cause hearing and, if the defendant appears to be guilty, to make an appropriate determination concerning bail." *Id.* at 536. We then held that the juvenile should be released "because he is being held pursuant to a sentence imposed in a proceeding which the District Court had no jurisdiction to conduct." *Ibid.*

Having thus decided the case, we then commented "on other issues argued by the petitioner because they involve the nature of future proceedings, if any, which may be conducted with respect to any adult complaint charging the petitioner with the same offence described in the juvenile complaint." *Ibid.* In our discussion of double jeopardy, at 539-542, we said at 541: "The dismissal of the juvenile complaint and the issuance of an adult complaint are contemplated by the statute (G. L. c. 119, § 75) to be in effect one event, and, as such, any jeopardy to which a juvenile was initially subjected under the juvenile complaint continues under the adult complaint." In our decision issued on January 31, 1974, we noted that "other courts have also applied the concept of a single, continuing jeopardy to the transfer of a minor for criminal prosecution," *ibid.,* and relied therefor in part on the decision in *Jones* v. *Breed,* 343 F. Supp. 690, 692 (C.D. Cal. 1972). The decision in *Jones* v. *Breed* was thereafter reversed by the Court of Appeals for the Ninth Circuit in 497 F.2d 1160, 1165 (9th Cir. 1974), holding that the double jeopardy defense "is fully applicable to juvenile court proceedings." On May 27, 1975, the United States Supreme Court upheld the Court of Appeals decision on the matter of double jeopardy by its decision in *Breed* v. *Jones,* 421 U.S. 519, 528-541 (1975), but remanded the case for other reasons. *Id.* at 541.

Our next case involving this subject was *Stokes* v. *Commonwealth,* 368 Mass. 754, decided on October 16, 1975, where all of the juvenile delinquency proceedings and the indictment, trial and conviction of the defendant in adult proceedings in the Superior Court had been completed before the decision of *Breed* v. *Jones, supra,* on May 27, 1975. We held in that case that the defense of double jeopardy did not apply for two reasons, viz., (a) the hearing which the District Court held on the juvenile complaint was not an adjudicatory proceeding (at 760-763), and (b) the decision of *Breed* v. *Jones, supra,* was not retroactive in the circumstances of that case (at 764-

771). To the same effect, see *Rachal* v. *Commonwealth,* 369 Mass. 956 (1975).

Our next in this line of cases was *Commonwealth* v. *A Juvenile* (*No. 2*), 370 Mass. 677 (1976). In that case all of the following steps had been completed prior to May 27, 1975, when the case of *Breed* v. *Jones, supra,* was decided: juvenile complaints were issued, a hearing (which we assumed, without deciding, was a trial on the merits) was held thereon, and they were dismissed, adult complaints were issued charging the same offenses which had been the basis of the juvenile complaints, the defendant waived an adult probable cause hearing and he was bound over to the grand jury which returned indictments, but no trial had been held thereon. The defendant then filed a motion to dismiss the indictments on the basis of the *Breed* decision and a judge of the Superior Court reported the question whether in these circumstances the double jeopardy based holding in *Breed* barred further prosecution of the indictments against the defendant. We held that it did not and we did so on the basis that the *Breed* decision "applies only to a juvenile adjudicatory hearing commenced after May 27, 1975, and since the defendant's hearing occurred prior to that . . . his pending prosecution in the Superior Court is not barred by the principle of double jeopardy." *Id.* at 683.

The status of the present case when the *Breed* case was decided on May 27, 1975, was precisely the same as that then existing in *Commonwealth* v. *A Juvenile* (*No. 2*), *supra.* The latter case had been argued before this court on March 4, 1976, and in reporting the present case the judge of the Superior Court referred to that fact and he suggested that the two cases were related "and might be conveniently consolidated." The two cases were not consolidated because the present case was not transferred from the Appeals Court to this court for direct appellate review until May 13, 1976. However, despite the fact that the cases were not consolidated, we recognize the common pattern of facts and legal issues in the two cases as did

the defendant's counsel at oral argument. We therefore hold that the present case is controlled by *Commonwealth* v. *A Juvenile (No. 2)*, *supra*, notwithstanding the Federal court proceedings described below.

In November, 1976, several persons who, prior to the decision in *Breed* v. *Jones*, *supra*, were bound over from District Courts to the Superior Court of this Commonwealth in cases which had been initiated by juvenile delinquency complaints, which were later dismissed and were superseded by adult complaints, and ultimately by indictments, sought injunctive relief in the United States District Court for the District of Massachusetts (USDC) against being put to trial in the Superior Court on the claim that such trials would subject them to double jeopardy. By their petition these several persons purported to be seeking relief for themselves and a class consisting of other defendants in similar cases. On November 8, 1976, a judge of the USDC issued an interlocutory order staying the trial of all such cases by the Superior Court until the earlier of (a) the final determination of the case in the USDC in which that order was entered, or (b) the election by a member of the supposed class to proceed to trial with his case in the Superior Court. No such class has ever been found or certified, and it does not appear that the USDC has yet heard or decided the case before it on the merits.

The Commonwealth's request for a stay, pending appeal, of the USDC's interlocutory order of November 8, 1976, was denied by the United States Court of Appeals for the First Circuit (USCA-1) on November 15, 1976. However, the hearing of the appeal on its merits was expedited and on January 14, 1977, the USCA-1, with one judge dissenting, ordered that "[t]he stay [issued by the USDC on November 8, 1976] will be vacated in ten days, at which time the district court is directed to dismiss the complaint." *Jackson* v. *Superior Court*, 549 F.2d 215, 220 (1st Cir. 1977). Although the case before the USDC had progressed only to the stage of an interlocutory order, it would appear

from the opinion and order of the USCA-1 that its disposition of the case was final, subject to the right of appeal by parties.[1]

In its opinion the USCA-1 discussed at length the various factors to be considered in determining whether the *Breed* decision should be granted general retroactivity and it decided against doing so. It held instead that it should be applied retroactively only in those cases where the State had obtained some undue advantage or benefit from disclosures made by the defendant at the hearing on the juvenile complaint, and that this should be determined on a case by case basis.[2]

The present case is before us on a stipulation of material facts which establishes clearly that the Commonwealth obtained no benefit from any disclosures made by the defendant at the hearing on the merits of the juvenile

---

[1] On January 25, 1977, Justice Brennan ordered that ". . . the order of the United States Court of Appeals for the First Circuit entered on January 14, 1977 in case No. 76-1524, which vacated the stay entered by the United States District Court for the District of Massachusetts be, and the same is hereby, stayed pending further consideration of the application when the memorandum of the respondents' is received and further order of the Circuit Justice or of the Court."

[2] The pertinent language of the USCA-1 opinion is the following: (549 F.2d at 220) "The balance of these matters may not compel a single answer, but we believe it reasonably permits one. The seriousness of the impact on the state of granting retroactivity is obvious. The most significant aspect of denying it, so far as petitioners are concerned, would be if the state obtained some benefit from disclosures made at the initial hearing. Since this is remediable, general retroactivity would be overkill; the extent, if any, of the state's undue advantage may be determined on an individual, case by case basis.

"There remains the question of how this should be accomplished. Manifestly, not in a class action. Manifestly, too, it is relief that should first be sought in the state court. . . . While the Massachusetts court had, in previous actions, denied retroactive application of *Breed,* this more limited relief has never been denied. It is not for us to assume that it will be. On this basis the present action is premature even as to the named petitioners.

"We add that we have not made any final analysis of what, if anything, a transferred juvenile can, or must show to establish that his adult trial was fundamentally unfair due to the advantage which the state incurred at his juvenile hearing. It is sufficient for the moment that this must be his path, as distinguished from asserting general retroactivity."

complaint. The parties agreed that the defendant presented no evidence either at that hearing or at the later probable cause hearing on the adult complaint. The stipulation of material facts includes the transcript of the argument of defendant's counsel at the close of the evidence at the hearing on the juvenile complaint. The argument in its entirety was addressed to the claimed insufficiency of the evidence to establish beyond a reasonable doubt that the defendant was one of the two persons alleged to have committed the crimes in question.

Thus, whether we apply the rule laid down in our opinion in *Commonwealth* v. *A Juvenile (No. 2)*, *supra* at 683, that "*Breed* applies only to a juvenile adjudicatory hearing commenced after May 27, 1975," or the practice suggested by the USCA-1 in *Jackson* v. *Superior Court*, 549 F.2d 215 (1st Cir. 1977), for giving limited selective retroactive effect to *Breed* on a case by case basis, our holding in the present case would be the same, viz., that the pre-*Breed* juvenile proceedings in this case do not operate to bar the further prosecution of the indictments now pending against the defendant in the Superior Court.

In recognition of the sound policy of judicial abstention from unnecessary discussion of matters not at issue, we refrain from expressing any opinion on whether we consider the action of the United States District Court in entering a sweeping injunction of the prosecution of a substantial number of criminal cases pending in the Superior Court of this Commonwealth consistent with the doctrine of nonintervention by Federal courts in criminal prosecutions pending in State courts as contemplated by the decision in *Younger* v. *Harris*, 401 U.S. 37 (1971). Zeigler, An Accommodation of the *Younger* Doctrine and the Duty of the Federal Courts to Enforce Constitutional Safeguards in the State Criminal Process, 125 U. Pa. L. Rev. 266 (1976). It is for the same reason that we express no opinion on the USCA-1's suggested procedure for the limited selective retroactive application of the *Breed* decision.

Our answer to the second question contained in the

report of this case is that the prosecution of the juvenile defendant on the indictments now pending against him in the Superior Court is not barred by the prohibition against double jeopardy in the Fifth and Fourteenth Amendments to the United States Constitution. We deem it unnecessary to answer the first and third questions.

This case is remanded to the Superior Court for further proceedings consistent with this opinion.

*So ordered.*