## COMMONWEALTH vs. THOMAS C. CLARK.

Essex.  October 4, 1979. — January 25, 1980.

Present: HENNESSEY, C.J., BRAUCHER, KAPLAN, LIACOS, & ABRAMS, JJ.

*Jurisdiction,* Delinquent child.  *Delinquent Child.  Constitutional Law,*
   Double jeopardy.  *Practice, Criminal,* Probable cause hearing, Trans-
   fer hearing, Juvenile delinquency proceedings.  *Judge.  Due Process of
   Law,* Juvenile delinquency proceedings.

Pleading guilty to a murder indictment did not preclude a defendant from
   claiming on appeal that he was twice subjected to jeopardy and that
   he was denied due process of law as a result of the trial court's lack of
   jurisdiction.  [625-626]
Despite the fact that the judge in a juvenile proceeding refused to sever the
   transfer hearing from the hearing on the juvenile complaint, the hear-
   ing was not adjudicatory in nature where a bifurcated proceeding was
   not mandated by the statute then in effect and where the judge's pro-
   nouncements regarding the scope of the hearing indicated at the outset
   that counsel should focus primarily on whether the defendant should
   be tried as a juvenile or an adult.  [627-629]
The decision of the United States Supreme Court in *Breed* v. *Jones,* 421
   U.S. 519 (1975), was not applicable to a juvenile proceeding which
   took place three years prior to the decision and in which the State ob-
   tained no advantage or benefit from disclosures made by the defend-
   ant; the date of the juvenile hearing determines the applicability of
   *Breed* v. *Jones* and not the date of the appeal.  [629-630]
There was no merit to a defendant's contention that the judge in a juven-
   ile proceeding had prejudged his case as indicated by the judge's state-
   ment at the outset of the hearing that the serious nature of the charge
   could warrant treating the defendant as an adult.  [630-631]
In the circumstances, there was no merit to a defendant's contention that
   a juvenile proceeding was fundamentally unfair in that he had to
   choose either to present no defense and risk an adverse adjudication or
   to defend his case on the merits and prejudice his chances in the adult
   court by disclosing his defense to the prosecution.  [631-632]
At a juvenile proceeding, the judge did not abuse his discretion in refusing
   to permit the defendant to offer evidence after he and the Common-
   wealth had rested.  [632]

There was no merit to a defendant's contention that a judge's written reasons for dismissing the juvenile complaint against the defendant were inadequate to warrant transfer to the Superior Court and failed to comply with Rule 85 of the District Courts, inserted March 4, 1969. [632-633]

INDICTMENT found and returned in the Superior Court on January 12, 1973.

The case was heard by *Lappin, J.*

The Supreme Judicial Court granted a request for direct appellate review.

*Kevin M. Keating* for the defendant.

*Dyanne Klein Polatin,* Assistant District Attorney, for the Commonwealth.

HENNESSEY, C.J.  The defendant, Thomas C. Clark, alleges violations of double jeopardy and procedural due process in the context of his 1972 juvenile delinquency proceeding pursuant to G. L. c. 119, §§ 52-84.  We conclude that the defendant has failed to demonstrate error under the law existing at the time of the juvenile hearing in a District Court.  We therefore affirm the subsequent judgment in the Superior Court pursuant to the defendant's plea of guilty of murder in the second degree.

A brief summary of the juvenile proceeding is in order. The defendant, who was sixteen years old at the time of the incident, was arrested for the murder of Joana R. Ferris.  At the outset of the November, 1972, juvenile proceeding in the District Court of Southern Essex at Lynn, a judge denied a motion by defense counsel to bifurcate the transfer and delinquency aspects of the defendant's hearing.

To establish the juvenile's probable perpetration of the murder, the Commonwealth presented fifteen witnesses who were cross-examined by counsel for the defendant. This evidence tended to show that the defendant broke into the victim's home, sexually assaulted her, and murdered her.  After the Commonwealth had concluded its case, defense counsel rested without calling any witnesses.  Then followed a colloquy between the judge and defense counsel

as to calling additional witnesses on the issue of the defendant's amenability to juvenile treatment.

The District Court judge, giving written reasons, ordered the dismissal of the juvenile complaint over the defendant's objection, and an adult complaint charging the defendant with murder was issued. The defendant waived his adult probable cause hearing. He was subsequently indicted for murder and was bound over for trial in the Superior Court.

The defendant thereafter moved in the Superior Court to dismiss the indictment. He complained of the District Court's failure to comply with Rule 85 of the District Courts (as adopted March 4, 1969) and alleged violations of the double jeopardy and due process clauses of the United States Constitution. At the hearing on the defendant's motion to dismiss in October, 1977,[1] defense counsel sought to establish that he had been denied an opportunity to convince the District Court judge that the defendant should not be treated as an adult. In an attempt to show that the public interest standard did not require dismissal of the juvenile complaint, defense counsel introduced reports and affidavits of psychiatrists, pointed to the defendant's lack of prior criminal record, and elicited testimony from the regional director of the Department of Youth Services (DYS) to the effect that, because the defendant was a juvenile, he should have been placed in a DYS forestry camp if found delinquent. The judge denied the defendant's motion to dismiss. The defendant then pleaded guilty to murder in the second degree and was sentenced to life imprisonment. A claim of appeal was filed, and the case was transferred to this court on the defendant's request for direct appellate review.

1. Before dealing with the primary thrusts of the defendant's appeal, we must consider the Commonwealth's threshold contention that, by entering a plea of guilty in the Su-

---

[1] The delay between the filing and the denial of the motion to dismiss stemmed in part from the United States District Court's stay of certain juvenile proceedings pending decision by the United States Court of Appeals for the First Circuit in *Jackson* v. *Superior Court,* 549 F.2d 215 (1st Cir.), cert. denied, 430 U.S. 975 (1977).

perior Court, the defendant waived his right to raise double jeopardy and due process issues on appeal. We disagree. A guilty plea will not preclude a court from hearing a constitutional claim that the State should not have tried the defendant at all. *Menna* v. *New York*, 423 U.S. 61, 62-63 n.2 (1975). Because the defendant alleges that his Superior Court proceedings following the hearing on the juvenile complaint constituted a second trial for the same offense in violation of the prohibition against double jeopardy, his claim goes to the "very power of the State to bring the defendant into court," see *Blackledge* v. *Perry*, 417 U.S. 21, 30 (1974), and thus may be raised on appeal despite his plea of guilty.

Likewise, due process claims of the kind raised by the defendant here are open for review after a plea of guilty. Under our statutes, a juvenile complaint must be dismissed before adult criminal proceedings may be initiated against a juvenile. See G. L. c. 119, §§ 61, 74. Where a dismissal is invalid, the criminal court lacks jurisdiction to accept a guilty plea. Cf. *Rachal* v. *Commonwealth*, 369 Mass. 956 (1975); *Commonwealth* v. *Franklin*, 366 Mass. 284, 287-288 (1974); *Commonwealth* v. *White* (*No. 1*), 365 Mass. 301, 306-307 (1974), cert. denied, 419 U.S. 1111 (1975); *A' Juvenile, petitioner*, 364 Mass. 531, 536 (1974); *Commonwealth* v. *Chase*, 348 Mass. 100, 103-105 (1964); *Metcalf* v. *Commonwealth*, 338 Mass. 648, 651-656 (1959). Because the defendant's due process claims attack the validity of the dismissal of the juvenile complaint, they are jurisdictional in nature. Consequently, his guilty plea does not preclude our consideration of those alleged errors. Cf. *Rachal* v. *Commonwealth, supra; Commonwealth* v. *Zion*, 359 Mass. 559, 563 (1971); *Garvin* v. *Commonwealth*, 351 Mass. 661, 663, appeal dismissed, 389 U.S. 13 (1967). We turn now to the merits of the case.

2. *Double jeopardy claim.* The defendant first urges us to apply to this case the result reached in *Breed* v. *Jones*, 421 U.S. 519 (1975). In that case the United States Supreme Court held that the double jeopardy principle bars prosecution of a juvenile as an adult for alleged crimes arising out of

the same incident for which the juvenile was previously adjudicated delinquent in a juvenile court.

Because *Breed* held that jeopardy attached only at an adjudicatory hearing on a juvenile complaint, the defendant correctly assumes that he must first establish that his juvenile proceedings were adjudicatory before he can raise a double jeopardy claim. See *Stokes* v. *Commonwealth,* 368 Mass. 754, 762 (1975). The defendant argues that the District Court judge's refusal to sever the transfer hearing from the hearing on the juvenile complaint, coupled with the judge's numerous equivocal statements concerning the purpose of the hearing,[2] reveals the adjudicatory nature of the proceeding. We disagree.

---

[2] The judge's initial statements included the following:

THE JUDGE: "What I am going to decide now is whether or not it is in the interest of the public to try him as a juvenile or as an adult.

"I am going to make my opinion right now. I want to hear from you as to what way I should hear it, as an adult or as a juvenile. What interest would it serve the public.

". . . .

"On the other hand, if you can convince the court that there should be a non-adjudication as a delinquent I will do so if the evidence does not warrant a finding of delinquency.

". . . .

COUNSEL FOR THE DEFENDANT: "Is the motion to sever the hearings denied then?"

THE JUDGE: "Well, yes. I am going forward with the hearing and I will make my decision at the end of the hearing as to whether or not I will order the juvenile complaint dismissed and an adult complaint to issue."

COUNSEL FOR THE DEFENDANT: "Okay."

THE JUDGE: "And I can also make a finding of non-delinquency too."

COUNSEL FOR THE DEFENDANT: "All right, your Honor."

At the conclusion of the hearing, the judge made the following statement:

THE JUDGE: "Well, there is only a matter of disposition and at this point I will say that the only purpose of this hearing is to determine whether or not I should make a finding of either delinquency or non-delinquency or dismiss the complaint and order an adult complaint to issue for a hearing of probable cause for the purpose of determining whether or not he should be bound over to the Superior Court for the Grand Jury and I am going to rule I am of the opinion that in the public interest that this matter be dismissed as a juvenile complaint and an adult complaint may issue for a probable cause hearing."

Our rejection of the defendant's assertion that the hearing was adjudicatory is twofold. First, a bifurcated proceeding, although possible, was not mandated by the statute then in effect. See *A Juvenile* v. *Commonwealth,* 370 Mass. 272, 278 (1976). A hearing on the juvenile complaint in the nature of a probable cause hearing could be conducted simultaneously with the transfer hearing without obviating the nonadjudicatory character of the proceeding. *Breed* v. *Jones, supra* at 538 n.18. Thus, the Commonwealth's introduction of substantial evidence connecting the juvenile with the offense in question did not in itself render the hearing adjudicatory. See *id.; Stokes* v. *Commonwealth,* 368 Mass. 754, 762 (1975). Indeed, we have noted that the preferable approach, in light of the importance of a decision to transfer a juvenile, provides for a determination of probable cause at the transfer hearing. *A Juvenile* v. *Commonwealth,* 370 Mass. 272, 279 n.9 (1976). And G. L. c. 119, § 61, as appearing in St. 1975, c. 840, § 1, now requires a judge to make a determination of probable cause during the transfer hearing.

Second, the District Court judge's pronouncements regarding the scope of the hearing indicated at the outset that counsel should focus primarily on whether or not it was in the public interest to try the defendant as a juvenile or as an adult. He also noted that should the Commonwealth fail to marshal sufficient evidence, he could find the defendant nondelinquent. Only after the Commonwealth had presented its case and the defense had rested, did the judge add that he could find delinquency as well as nondelinquency. See note 2, *supra.* We regard the judge's concluding statements as an unfortunate slip of the tongue. This misstatement is rendered harmless, however, by its occurrence at the end of the hearing. Defense counsel had obviously already made his tactical decision not to call certain psychiatrists as witnesses because they might inculpate the defendant by revealing his admissions and thus might preclude an adjudication of nondelinquency. As a result of this strategy, the defendant risked being tried as an adult, but he did not

risk the adjudication of juvenile delinquency necessary to subject him to double jeopardy under *Breed* v. *Jones.* See *Stokes* v. *Commonwealth,* 368 Mass. 754, 764 (1975). Moreover, no adjudication of delinquency or finding of guilt was ever made.[3] Thus, we conclude that the defendant's juvenile hearing constituted a transfer hearing only and did not subject him to double jeopardy.

Even if we assumed arguendo that the defendant's juvenile proceeding was adjudicatory, our conclusion would be the same, because we have held *Breed* inapplicable to juvenile proceedings occurring prior to the date of that decision, May 27, 1975. See *Commonwealth* v. *A Juvenile,* 372 Mass. 38 (1977); *Commonwealth* v. *A Juvenile (No. 2),* 370 Mass. 677 (1976); *Rachal* v. *Commonwealth,* 369 Mass. 956 (1975); *Stokes* v. *Commonwealth,* 368 Mass. 754 (1975). The defendant's juvenile hearing took place three years prior to that date. Thus, our decisions would foreclose a double jeopardy bar in the instant case. The defendant nonetheless argues that these cases are not controlling, because they involved nonadjudicatory transfer hearings, which did not place the petitioning juveniles in jeopardy prior to their adult trials. The defendant is mistaken in his attempt to distinguish our previous decisions. In *Commonwealth* v. *A Juvenile (No. 2), supra* at 678, we assumed, without deciding, that the juvenile hearing in question constituted an adjudicatory one, and nonetheless we refused to apply *Breed* v. *Jones* retroactively.

We are cognizant of the rule suggested in *Jackson* v. *Superior Court,* 549 F.2d 215, 220 (1st Cir.), cert. denied, 430 U.S. 975 (1977), whereby *Breed* v. *Jones* would be applied retroactively to those cases where the State obtained some advantage or benefit from disclosures made by the defendant at the hearing on the juvenile complaint. Even if we

---

[3] We recognize that the crucial issue is the express or implied purpose and scope of the hearing and whether, as viewed from the outset, it could have resulted in an adjudication of delinquency. The announced result is only some evidence of the hearing's purpose and scope.

were to accept and apply this principle, it would not benefit this defendant. The defendant presented no evidence, called no witnesses, and made no inculpatory statements from which the Commonwealth could have benefited at a subsequent trial.

The defendant next urges that because his case is before us on appeal "in regular course for decision on the law as it presently stands," see *Commonwealth* v. *Spofford*, 343 Mass. 703, 707 (1962), we are presented with a prospective application of *Breed* v. *Jones* that would not contradict our conclusion first enunciated in *Stokes, supra,* that *Breed* should not be applied retroactively.

We rejected as irrelevant a similar argument in *Commonwealth* v. *A Juvenile (No. 2)*, 370 Mass. 677, 681-683 (1976). There we held that the date of the juvenile hearing determines the applicability of *Breed* and that criminal prosecutions following adjudicatory juvenile proceedings conducted prior to May 27, 1975 (the date of the decision in *Breed*), would not be barred by the principle of double jeopardy. We reaffirmed this rule in *Commonwealth* v. *A Juvenile*, 372 Mass. 38, 42-43 (1977), and again hold it controlling in the instant case.

In holding that the pre-*Breed* juvenile proceeding in this case did not bar the further prosecution of the defendant in the Superior Court, we decline the defendant's invitation to reexamine our decision in *Stokes* v. *Commonwealth*, 368 Mass. 754 (1975), which rejected the retroactive application of *Breed*.

3. *Due process claims.* The defendant cites four instances as evidence of the fundamental unfairness and invalidity of his juvenile proceeding. We consider his allegations seriatim and conclude that his juvenile court hearing was fundamentally fair.

The defendant first contends that the judge prejudged his case. He points to the judge's statement near the outset of the hearing that the serious nature of the charge could warrant treating the defendant as an adult. The statement complained of does not support the defendant's contention

of prejudice. We have held "that even an earlier expression of opinion as to a matter to be decided does not disqualify a judge or indicate want of competency to hear fairly and decide impartially all issues." *King* v. *Grace*, 293 Mass. 244, 247 (1936). See also *Kennedy* v. *District Court of Dukes County*, 356 Mass. 367, 379 (1969). At the hearing, the judge assured counsel that he could act impartially, and no objection was taken to the judge's continued participation. We find no error in the judge's failure to recuse himself sua sponte. See *King* v. *Grace, supra* at 247; *Lena* v. *Commonwealth*, 369 Mass. 571, 575-576 (1976).

The defendant's second allegation of unfairness is closely related to and, as will be seen, merges into the double jeopardy issue. The defendant argues that he faced the possibility of a transfer hearing after the adjudicatory one. Consequently, he suffered substantial disadvantage in having to choose either to present no defense and risk an adverse adjudication and disposition or to defend his case on the merits and possibly prejudice his chances in the adult court by disclosing his defense to the prosecution.

We reject the defendant's argument for two reasons. First, we have concluded that the juvenile proceeding in the present case was not a trial on the merits of the juvenile complaint. The defendant did not confront the prospect of an adjudication of delinquency followed by a transfer hearing. Thus, he was not prejudiced by the dilemma of deciding whether or not to reveal his defense. The defendant presented no evidence, called no witnesses, and made no inculpatory statements from which the Commonwealth could have benefited at a subsequent trial. Compare the suggested analysis in *Jackson* v. *Superior Court*, discussed *supra* under "Double Jeopardy."

Second, in *Stokes* v. *Commonwealth*, 368 Mass. 754, 766-771 (1975), we recognized that this tactical dilemma was the principal problem addressed and eliminated by *Breed* v. *Jones, supra*, and we considered its due process, as well as its double jeopardy implications, in our determination not to apply *Breed* retroactively. It is irrelevant, there-

fore, whether the defendant's claim hinges on due process or double jeopardy. Our decisions in *Stokes* v. *Commonwealth, supra,* and in *Commonwealth* v. *A Juvenile (No. 2),* 370 Mass. 677 (1976), are dispositive.

The defendant next asserts that he was denied an opportunity to demonstrate why he should be treated as a juvenile because the judge did not permit him to offer evidence after he and the Commonwealth had rested. The admission of evidence after both parties have closed their cases is within the discretion of the trial judge. *Commonwealth* v. *Agiasottelis,* 336 Mass. 12, 15 (1957). *Commonwealth* v. *Wood,* 302 Mass. 265, 267-268 (1939). 6 J. Wigmore, Evidence § 1877 (Chadbourn rev. 1976). We cannot say that the judge abused that discretion, particularly since there is good reason to conclude that defense counsel rested his case for the tactical purpose of revealing no inculpatory evidence. Equivocal statements concerning other possible evidence related to the transfer issue, made by counsel after resting, afford no good reason for relief at this stage. The District Court judge in his consideration of the transfer issue, had already heard enough evidence of the defendant's involvement in a brutal crime to justify the dismissal of the juvenile complaint. See discussion immediately following.

The defendant's final assignment of error is that the judge's written reasons for dismissing the juvenile complaint were inadequate to warrant transfer to the Superior Court and failed to comply with Rule 85 of the Rules of the District Courts, inserted March 4, 1969. At the time of the defendant's juvenile proceeding in November, 1972, G. L. c. 119, § 61, as appearing in St. 1964, c. 308, § 2, provided for the dismissal of a juvenile complaint where "the interests of the public" required adult treatment. The version of rule 85 then in effect merely established that juveniles must be represented by counsel at such transfer hearings and that a judge's determination to dismiss a complaint must "be accompanied by a finding in writing of the reasons or considerations therefor."[4]

---

[4] Rule 85 was amended, and rule 85A, which sets forth factors relevant to a transfer decision, was inserted effective May 7, 1973. See *Common-*

An extensive statement of reasons for the judge's decision was not then required. *Stokes* v. *Commonwealth,* 368 Mass. 754, 755, 759 (1975) (inscription on back of complaints stated "[t]hat the interest of the public requires that he shall be tried for the said offence"), habeas corpus denied sub nom. *Stokes* v. *Fair,* 581 F.2d 287 (1978), cert. denied, 439 U.S. 1078 (1979). See also *Commonwealth* v. *A Juvenile (No. 2),* 370 Mass. 677, 680 n.4 (1976) (reason cited by judge was "[n]ature of the offense charged, such as its seriousness"). Further, we have declined to recognize a constitutional right to a statement of reasons in support of a transfer decision. *Commonwealth* v. *Franklin,* 366 Mass. 284, 287 (1974). *Commonwealth* v. *Roberts,* 362 Mass. 357, 368-369 (1972). See *Stokes* v. *Commonwealth, supra* at 774, quoting from *Breed* v. *Jones,* 421 U.S. 519, 537 (1975), in which we noted that "[i]n considering th[is argument], it is helpful to bear in mind that the United States Supreme Court 'has never attempted to prescribe criteria for, or the nature and quantum of evidence that must support, a decision to transfer a juvenile for trial in adult court.'"

4. *Conclusion.* Judged by our present law the juvenile proceedings here were deficient, at least in the criteria applied and in the findings made by the judge in the transfer hearing. General Laws c. 119, § 61, as appearing in St. 1975, c. 840, § 1, now requires that a District Court judge, before dismissing a juvenile complaint, enter a written finding, based on "clear and convincing" evidence, demonstrating that the minor is not amenable for treatment as a juvenile. Subsidiary findings directed to the factors outlined by rule 85A, namely: "(1) the seriousness of the alleged offense; (2) the child's family, school and social history, including his court and juvenile delinquency

*wealth* v. *A Juvenile,* 363 Mass. 640, 642 (1973). Cf. *A Juvenile* v. *Commonwealth,* 370 Mass. 272, 282 (1976) (decision to transfer not proper under new rule 85A "when supported by findings which deal only with the seriousness of the charge").

record, if any; (3) the apparent emotional, social and psychological condition of the child; and; (4) adequate protection of the public, the likelihood of rehabilitation of the child and the rehabilitation facilities available," must indicate unequivocally the basis for a conclusion that the juvenile should be transferred for trial in an adult court. See Guidelines for Transfer Hearings, *A Juvenile* v. *Commonwealth,* 370 Mass. 272, 280-283 (1976). The defendant, in his various arguments, would have us retroactively apply to his proceedings subsequent changes in court rules, statutes, and constitutional interpretation — none of which became effective until several years after the challenged proceedings were held. This we decline to do. We have emphasized that the procedures followed in the 1972 juvenile hearing in this case were permissible under the then existing law. Accordingly, there is no constitutional imperative that we afford relief. Nor do the facts and circumstances reveal any injustice necessitating an exercise of our curative discretion.

It follows from our discussion above that the judgment on the defendant's plea of guilty is to be affirmed.

*So ordered.*